# TUTTLE *v.* DETROIT, GRAND HAVEN AND MIL-WAUKEE RAILWAY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

Argued April 4, 1887. — Decided May 23, 1887.

There is no rule of law to restrict railroad companies as to the curves it shall use in its freight stations and its yards, where the safety of passengers and of the public are not involved.

The engineering question as to the curves proper to be made in the track of a railroad within the freight stations or the yards of the railroad company is not a question to be left to a jury to determine.

Brakemen and other persons employed by a railroad company within the freight stations and the yards of the company, when they accept the employment assume the risks arising from the nature of the curves existing in the track, and the construction of the cars used by the company; and they are bound to exercise the care and caution which the perils of the business demand.

When a servant, in the execution of his master's business, receives an injury which befalls him from one of the risks incident to the business, he cannot hold the master responsible, but must bear the consequences himself.

THIS was an action for negligence resulting in the death of plaintiff's husband and intestate, Orson Tuttle, a brakeman in the defendant's employment. The declaration contained three counts, the first of which charged that on or about the 30th of October, 1882, the said Tuttle was in the employ of the defendant in the city of Detroit at the "Detroit, Grand Haven and Milwaukee yards," and in the course of his ordinary employment was ordered to couple some cars standing on a certain track known as "boot-jack siding;" that said siding is a double-curve track containing a very sharp curve; that in compliance with the order he proceeded to couple certain cars on said siding, which were near a certain boat-slip, and while he was endeavoring to couple said cars the "drawheads" of the cars failed to meet and passed each other, allowing the said cars to come so close together that he was

crushed to death; that there were no bumpers nor other device on either of the said cars to prevent them from going together, in case said draw-heads failed to meet and passed each other; and that the only device on said cars for the purpose of keeping them apart and to receive the concussion in coupling was the draw-heads aforesaid. The charge of negligence was, that the defendant, disregarding its duty, neglected, in the construction of its said cars, to provide any means to prevent injuring its said employe in case the draw-heads of its cars so constructed should fail to meet or pass each other under circumstances set forth; and that the said defendant, in the construction of said "boot-jack siding," so called, negligently and unskilfully constructed the same with so sharp a curve that the draw-heads of the said cars failed to meet and passed each other, thereby causing the death of the said Orson Tuttle while in the act of coupling said cars as aforesaid, without fault or negligence on his part.

The third count was substantially the same as the first; the second count, which charged a defective construction of the car, in not supplying it with bumpers, or other means of preventing the draw-heads from passing each other, was abandoned at the trial. As stated in the brief of the plaintiff's counsel, "the first and third counts allege that boot-jack siding was negligently and unskilfully constructed by the defendant with so sharp a curve that the draw-heads of the cars in use by it would pass each other and cause the cars to crush any one who attempted to make a coupling thereon:" and this alleged faulty construction of the track was the principal matter of contest on the trial; the plaintiff contending that the defendant was bound, in duty to its workmen and employes, to construct a track that would not expose them to the danger which existed in this case; whilst the defendant contended, and offered evidence to prove, that the track was constructed according to the requirements of the situation, a sharp curve being necessary at that place in order to place the cars, when loading, alongside of the dock or slip; that such curves are not uncommon in station yards; that in such conditions the draw-heads of cars quite often pass each other

when the cars come together; that this must be presumed to have been well known to Tuttle, the deceased, who was an experienced yard man; that he accepted the employment with a full knowledge of its risks, and must be held to have assumed them; and that it was negligence on his part to place himself in such a situation as to incur the danger and suffer the injury complained of. It appeared by the evidence that, when trying to make the coupling, the deceased stood on the inside of the curve where the corners of the cars come in contact when the draw-heads pass each other, and will crush a person caught between them; whereas on the outside of the curve they are widely separated, and there is no danger. The defendants contended that the position thus taken by Tuttle was contributory negligence on his part. On the other hand, the plaintiff offered evidence tending to show that it was usual for the brakeman in coupling cars on a curve to stand on the inside so as to see the engineer and exchange signals with him for stopping, backing, or going forward. The defendants contended, and offered evidence tending to show, that this was not necessary, as there were always the yard master or others standing by and coöperating, by whom the signals could be given.

This statement of the pleadings and of the leading issues raised on the trial, is sufficient for properly understanding the question of law presented to the court. Upon the evidence adduced, the judge directed the jury to find a verdict for the defendant, holding that Tuttle wantonly assumed the risk of remaining upon the inside of the draw-bar, when he should have gone on the other side, and that the defendant ought not to be held in this action.

*Mr. O. M. Springer* for plaintiff in error. *Mr. F. A. Baker* was with him on the brief.

I. It was the duty of the defendant to construct and keep in repair, a proper, sufficient and safe road-bed and track, and it is liable to an employe for negligence in the performance of this duty.

In the recent case of *Northern Pacific Railroad* v. *Herbert,*

116 U. S. 642, this court, in an opinion by Mr. Justice Field, after stating the rule with reference to the risks incident to the employment, said:

"It is equally well settled, however, that it is the duty of the employer to select and retain servants who are fitted and competent for the service and to furnish sufficient and safe materials, machinery and other means, by which it is to be performed, and to keep them in repair and order. This duty he cannot delegate to a servant so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed, no duty required of him for the safety and protection of his servants can be transferred, so as to exonerate him from such liability. The servant does not undertake to incur the risks arising from the want of sufficient and skilful co-laborers, or from defective machinery, or other instruments with which he is to work. His contract implies that in regard to these matters his employer will make adequate provision that no danger shall ensue to him. This doctrine has been so frequently asserted by courts of the highest character that it can hardly be considered any longer open to serious question."

This doctrine has also been recently enforced by the Supreme Court of the State of Michigan, in *Broderick* v. *Detroit Union Station Co.*, 56 Mich. 261. In addition to the authorities cited in *Northern Pacific Railroad* v. *Herbert*, we refer to the following, in which the employer has been held liable for negligence in constructing or in not repairing the instrumentalities the servant was required to use in the performance of his duties: Want of repairs in the road-bed of a railroad, *Snow* v. *Housatonic Railroad*, 8 Allen, 441. Insufficiently supported derrick at side of railroad, *Holden* v. *Fitchburg Railroad*, 129 Mass. 268. Defective construction of trestle work, *Elmer* v. *Locke*, 135 Mass. 575. Failure to repair a tell-tale, or bridge-guard, *Warden* v. *Old Colony Railroad*, 137 Mass. 204. Improperly constructed culvert under a railroad, *Davis* v. *Central Vermont Railroad*, 55 Vt. 85; *Chicago & Northwestern Railroad* v. *Swett*, 45 Ill. 197. Machinery negligently set up, *Wilson* v. *Willimantic Co.*, 50 Conn. 433. Defective platform or scaffold, *Benzing* v. *Steinway*, 101 N. Y. 547; *Behm* v. *Armour*, 58

Wis. 1.   Permitting car-ladder to remain out of order, *Richmond & Danville Railroad* v. *Moore*, 78 Va. 93.   Negligently constructed railroad, *Trask* v. *California Southern Railroad*, 63 Cal. 96.   Rotten ties on the road-bed of a railroad, *H. & T. C. R'y* v. *McNamara*, 59 Texas, 255.   Defective brake on a railroad car, *Texas & Pacific Railway* v. *McAtee*, 61 Tex. 695.   Uneven and improperly constructed side-track, *Porter* v. *Hannibal & St. Joseph Railroad*, 60 Missouri, 160.   Buffers on two cars so placed that they went by each other, and crushed employe between the cars, *Ellis* v. *New York, &c., Railroad*, 95 N. Y. 546.   Defective machinery for operating a circular saw, *Indiana Car Co.* v. *Parker*, 100 Ind. 181.   Side-track with too short a curve, and an improper connection with main track, *Patterson* v. *Pittsburg, &c., Railroad*, 76 Penn. St. 389.

II. The question of contributory negligence should have been submitted to the jury.

To hold that a jury would not be warranted in finding that the deceased was not guilty of contributory negligence would be a contradiction of the main facts and circumstances of the case as shown by the record, and a trifling with matters involving the life of a human being.   See *Spicer* v. *South Boston Iron Co.*, 138 Mass. 426 ; *Mulvey* v. *Rhode Island Locomotive Works*, 14 R. I. 204 ; *Kelley* v. *Silver Spring Co.*, 12 R. I. 112 ; *Porter* v. *Hannibal & St. Joseph Railroad*, 60 Missouri, 160.

In the case at bar, it was apparent that there was quite a sharp curve, but that it was so very sharp or irregular, that the draw-heads would pass each other, could only be known by actual experiment, or by the use of instruments.   The defect was a latent one in every sense of the word.

But even if the deceased had known of the defect, it would not necessarily follow that he was guilty of contributory negligence, simply because, in the busy and prompt performance of his work, he did not remember the exact locality of the point of danger.   *Snow* v. *Housatonic Co.*, 8 Allen, 441; *Greenleaf* v. *Illinois Central*, 29 Iowa, 14.

*Mr. E. W. Meddaugh*, for defendant in error, submitted on his brief.

Mr. Justice Bradley, after stating the case, delivered the opinion of the court.

We have carefully read the evidence presented by the bill of exceptions, and, although it appears that the curve was a very sharp one at the place where the accident happened, yet we do not think that public policy requires the courts to lay down any rule of law to restrict a railroad company as to the curves it shall use in its freight depots and yards, where the safety of passengers and the public is not involved; much less that it should be left to the varying and uncertain opinions of juries to determine such an engineering question. (For analogous cases as to the right of a manufacturer to choose the kind of machinery he will use in his business, see *Richards* v. *Rough*, 53 Mich. 212; *Hayden* v. *Smithville Man. Co.*, 29 Conn. 548, 558.) The interest of railroad companies themselves is so strongly in favor of easy curves as a means of facilitating the movement of their cars, that it may well be left to the discretion of their officers and engineers in what manner to construct them for the proper transaction of their business in yards, &c. It must be a very extraordinary case, indeed, in which their discretion in this matter should be interfered with in determining their obligations to their employes. The brakemen and others employed to work in such situations must decide for themselves whether they will encounter the hazards incidental thereto; and if they decide to do so, they must be content to assume the risks. For the views of this court in a cognate matter, see *Randall* v. *Baltimore & Ohio Railroad*, 109 U. S. 478, 482, where it was said: "A railroad yard, where trains are made up, necessarily has a great number of tracks and switches close to one another, and any one who enters the service of a railroad corporation connected with the moving of trains, assumes the risks of that condition of things." It is for those who enter into such employments to exercise all that care and caution which the perils of the business in each

case demand.   The perils in the present case, arising from the sharpness of the curve were seen and known.   They were not like the defects of unsafe machinery which the employer has neglected to repair, and which his employes have reason to suppose is in proper working condition.   Everything was open and visible, and the deceased had only to use his senses and his faculties to avoid the dangers to which he was exposed. One of these dangers was that of the draw-bars slipping and passing each other when the cars were brought together.   It was his duty to look out for this and avoid it.   The danger existed only on the inside of the curve.   This must have been known to him.   It will be presumed that, as an experienced brakeman, he did know it; for it is one of those things which happen, in the course of his employment, under such conditions as existed here.

Without attempting, therefore, to give a summary of the evidence, we have no hesitation in saying that the judge was right in holding that the deceased, by voluntarily assuming the risk of remaining on the inside of the draw-bar, brought the injury upon himself, and the judge was right, therefore, in directing a verdict for the defendant.   We are led to this conclusion, not only on the ground that the deceased, by his own negligence, contributed to the accident, but on the broader ground, already alluded to, that a person who enters into the service of another in a particular employment assumes the risks incident to such employment.   Judge Cooley announces the rule in the following terms: "The rule is now well settled," says he, " that, in general, when a servant, in the execution of his master's business, receives an injury which befalls him from one of the risks incident to the business, he cannot hold the master responsible, but must bear the consequences himself.   The reason most generally assigned for this rule is, that the servant, when he engages in the employment, does so in view of all the incidental hazards, and that he and his employer, when making their negotiations, fixing the terms and agreeing upon the compensation that shall be paid to him, must have contemplated these as having an important bearing upon their stipulations.   As the servant then knows that he

will be exposed to the incidental risk, 'he must be supposed to have contracted that, as between himself and the master, he would run this risk.'" The author proceeds to show that this is also a rule of public policy, inasmuch as an opposite doctrine would not only subject employers to unreasonable and often ruinous responsibilities, thereby embarrassing all branches of business, but it would be an encouragement to the servant to omit that diligence and caution which he is in duty bound to exercise on behalf of his master, to protect him against the misconduct and negligence of others in the same service; and in exercising such diligence and caution he would have a better security against injury to himself than any recourse to the master for damages could afford.

This accurate summary of the law supersedes the necessity of quoting cases, which are referred to by the author and by every recent writer on the same subject. Its application to this case is quite clear. The defendant, as we have seen, had a right to construct its side-track with such curves as its engineers deemed expedient and proper; and as to the draw-heads, and the absence of bumpers, the plaintiff herself abandoned all claim founded upon any supposed misconstruction of the cars in relation thereto. Then, it was clearly shown to be a not uncommon accident, especially on sharp curves, for the draw-heads of cars to slip by and pass each other. Tuttle, the deceased, entered into the employment of the defendant as a brakeman in the yard in question, with a full knowledge (actual or presumed) of all these things — the form of the side-tracks, the construction of the cars, and the hazards incident to the service. Of one of these hazards he was unfortunately the victim. The only conclusion to be reached from these undoubted facts is, that he assumed the risks of the business, and his representative has no recourse for damages against the company.

This view of the subject renders it unnecessary to examine the various particular instructions which the plaintiff's counsel requested the court to give to the jury. The only one that need be noticed is the following, namely:

"If the jury find that Tuttle had no notice or knowledge

of the fact that the draw-heads would pass on a portion of this siding, and that the fact itself would not be noticed or discovered by a careful and prudent man while engaged in coupling cars on said siding, then it cannot be said that he was guilty of contributory negligence, unless it had already come to his knowledge that the draw-heads would pass."

On this point the judge stated, in his charge, that "he (the deceased) knew, as he was an experienced man, that draw-bars do slip sometimes, even upon a straight track, as it has been testified to, and the sharper the curve the greater was the danger of their slipping." In making this statement the judge was fully borne out by the testimony, and there was no evidence to contradict it.

We find no error in the judgment, and it is therefore affirmed.

MR. JUSTICE MILLER, with whom was MR. JUSTICE HARLAN, dissenting.

I dissent from this judgment, and especially the proposition that the railroad company owed no duty to its employes in regard to the sharpness of the curves of the track in the yards in which they are employed.

MR. JUSTICE HARLAN unites in this dissent.