# Staunton.

# N. & W. R. R. Co. v. McDonald's Adm'r.

### September 10th, 1891.

1. EMPLOYER AND EMPLOYEE—*Assumption of risk.*—No recovery can be had from railroad company for death of brakeman resulting from use of cars having mismatched couplings, where he continues to use them over a year without company's promise to change them, as he thereby assumes the extra risk incident thereto.

2. IDEM—*Contributory Negligence—Case at bar.*—Brakeman knowing the couplings are mismatched, places pin in moving car, and remains between the two cars to shake pin into position, when he might safely have made the coupling by placing pin in standing car, and letting it be shaken into position by the concussion.

HELD:

   Guilty of negligence.

Error to judgment of circuit court of Pulaski county, rendered January 24th, 1890, in an action of trespass on the case, wherein Robert M. Chumbly, administrator of Charles O. McDonald, deceased, was plaintiff, and the plaintiff in error, the Norfolk and Western railroad company was defendant. Opinion states the case.

*Phlegar & Johnson* and *Moore & Brown*, for plaintiff in error.

*J. C. Wysor*, for defendant in error.

LEWIS, P., delivered the opinion of the court.

This action was brought to recover damages for the alleged negligent killing of the plaintiff's intestate, while coupling cars as a brakeman on a passenger train in the defendant's employ. The charge in the declaration was that the defendant company, at the time the deceased entered its service was using self-coupling cars, and that the continued use of such cars was contemplated in the contract of service, but that the defendant violated its contract in this particular, and, at the time the deceased was killed, was using mismatched couplings, which although apparently self-coupling and safe, were, in fact, not so, in consequence of which the deceased was killed.

There was a verdict for the plaintiff for $10,000 damages, which the defendant moved the court to set aside as being contrary to the law and the evidence; but the motion was overruled by the judgment complained of.

The case is a simple one, and may be briefly disposed of. It belongs to a numerous class of cases that of late years have come to this court, involving the correlative duties of master and servant, and as to which the law, so far as a case like the present is concerned, is too well settled and familiar to require a citation of the authorities in this opinion.

The plaintiff relies upon the undisputed rule that the master must observe ordinary care in supplying and maintaining adequately safe machinery and other appliances for the work required of the servant, which rule, it is contended, has not been observed in the present case. On the other hand, the company insists that there has been no violation of duty on its part, and that the death of the deceased was caused by his own negligence, and this position is well taken.

The charge in the declaration that self-coupling cars, exclusively, were used by the company at the time the deceased entered its service is not supported by the evidence. It appears that at one time it had in use on its passenger trains what were known as the Miller couplers, but that when the deceased entered the service they were being gradually re-

placed by other self-couplers, known as the Janney coupler; that this change was commenced several months before that time, and was known to the deceased, who continued in the service for a year or more before his death.

The deceased was killed while attempting to couple two cars, upon one of which was a Miller coupler and on the other a Janney coupler. These couplings being mismatched, the consequence was that when the cars came together the couplers passed each other, and the deceased was caught between the cars and crushed to death.

Where self-couplers of the same kind are used, the coupling is effected without the use of link and pin. But with mismatched couplers, a link and pin is essential, and the coupling is then made by a person on the ground. The latter mode of coupling is more dangerous than the former, which renders a greater degree of care and caution necessary in making it. The brakeman, or other person making it, should not go between the cars, but stand outside the rail after adjusting the link in one coupler and the pin in the other. When a Miller and Janney coupler are used, the link ought to be adjusted in the former and the pin in the latter, so that when the cars come together the pin, by force of the concussion, will drop into the link.

It appears, moreover, that the mismatched couplers in question had been in use on the train upon which the deceased was employed some time before he entered the service, and that after his employment he often used them. He was presumably aware of the extra hazard incident to their use, and there was no promise on the part of the company to use other couplers. This brings the case within the principle that when the servant voluntarily enters upon the employment knowing that the machinery he is required to operate is defective or unsuitable, and continues in the service without any promise by the master to render the same less dangerous, he assumes the risk and must abide the consequences so far as any claim against the

master is concerned. *Darracott* v. *Chesapeake and Ohio Railway Company*, 83 Va. 288; *Tuttle* v. *Milwaukee Railway*, 122 U. S. 189.

In the present case the danger of the coupling was not only known to the deceased, but it was open and obvious. Yet with reckless disregard of his own safety he went between the cars and was killed. Moreover, instead of fastening the link in the Miller coupler and placing the pin in the Janney coupler on the standing car, he did exactly the reverse, and then remained between the cars "to shake the pin in," instead of taking position outside the rail as he ought to have done.

It is clear, therefore, that even if negligence could be rightly imputed to the company on any ground, the deceased was guilty of such contributory negligence as to defeat the action. The judgment approving the verdict must, therefore, be reversed and the case remanded for a new trial.

JUDGMENT REVERSED.