# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## MCDONALD'S ADM'R v. NORFOLK AND WESTERN RAILROAD CO.

### JULY 22, 1897.

1. MASTER AND SERVANT—*Safe Machinery—Dangers Assumed by Servant.*—It is the duty of the master to use ordinary care and diligence to provide reasonably safe and suitable machinery and appliances for the use of the servant. The servant assumes all the ordinary risks of the service. He assumes, as a rule, all risks arising from causes known to him, or which are open and obvious, and must use reasonable care and caution for his own safety. If machinery and appliances are defective or unsuitable, and this fact is known to the servant, and he remains in the service, and continues to use them without giving notice thereof to the master, or without any promise from the master to render the same less dangerous, he will be taken to have assumed the risk of all danger to be reasonably apprehended from their use, and is bound to use the care and caution which the situation demands.

2. MASTER AND SERVANT—*Brakeman—Mismatched Couplings—Known Dangers—Personal Injuries.*—A brakeman cannot recover of the company damages for a personal injury inflicted on him, resulting from the use of mismatched couplers, where it appears that, at the time of entering the service, he knew of such use, and of the danger of coupling cars with them, and continued in the service for a year thereafter without remonstrance or notice to the company, or promise on its part to make any changes, and where the danger was open and obvious, and he made the coupling in an unusual manner, and different from that in which he was instructed. Nor will the use of other dangerous appliances equally obvious and open, and known to the brakeman, render the company liable, when he has been negligent in the use of them.

3. MASTER AND SERVANT—*Safety of Servant—Duty of Master.*—An instruction which implies that extraordinary care is required of a master to provide for the safety of the servant should be refused.

The law only requires ordinary care and diligence, and such an instruction is calculated to mislead the jury.
4. INSTRUCTIONS—*Jury     Sufficiently     Instructed—Other     Instructions.*— Where instructions already given by the court cover the entire case, and properly submit it to the determination of the jury, it is not error to refuse other instructions tendered which would not furnish any additional aid to the jury in reaching a proper verdict.
5. FELLOW-SERVANTS—*Engineer     and     Brakeman.*—The     engineer     and brakeman on the same train are fellow-servants.

Error to a judgment of the Circuit Court of Pulaski county, rendered June 18, 1894, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The evidence sufficiently appears in the opinion of the court. After all the evidence had been introduced the plaintiff offered eight instructions. The court gave instruction No. 1, and, after striking out the words "to the best of its skill and judgment" in instruction No. 2, gave it as thus modified. It refused to give No. 4, No. 5, No. 6, No. 7, and No. 8. These instructions were as follows:

*No. 1, as Given.*

"The jury are instructed that if they believe from the evidence that the defendant employed the plaintiff's intestate, C. O. McDonald, as a brakeman on one of the passenger trains, it became and was the duty of the defendant to provide the said C. O. McDonald, with reasonably safe cars and couplings for the performance of the work required of him as such brakeman, and that if the defendant failed to perform its duty in this regard, and did not provide the said C. O. McDonald with reasonably safe and suitable cars and couplings and that, as a result of the failure of the defendant to perform said duty by providing said C. O. McDonald with reasonably safe and suitable cars and couplings he, said C. O.

McDonald, was caught, and killed between two of defendant's cars, while he was trying to couple them together in the performance of his duty as said brakeman, they should find for the plaintiff, unless they further believe that the said C. O. McDonald was himself guilty of negligence which proximately contributed to his death.

### No. 2, as Offered.

"The defendant company was bound to use ordinary care in supplying and maintaining proper instrumentalities for the performance of the work required, and generally to provide for the safety of the servant in the course of the employment to the best of its skill and judgment; and if it failed in the performance of its duty in this particular it is liable to its servant as it would be to a stranger, if such servant himself was without fault which proximately contributed to his death.

### No. 2, as Amended and Given

"The defendant company was bound to use ordinary care in in supplying and maintaining proper instrumentalities for the performance of the work required, and generally to provide for the safety of the servant in the course of the employment, and if it failed in the performance of its duty in this particular, it is liable to its servant as it would be to a stranger, if such servant himself was without fault which proximately contributed to his death.

### No. 3.   Given.

"If the jury believe from the evidence that the plaintiff is entitled to recover, in estimating the damages the jury should find the sum with reference,

"First. To the pecuniary loss of the widow and child, at a sum equal to the probable earnings of the deceased, considering his

age, business, capacity, experience, habits, energy, and perseverance during his probable life.

"Second. In ascertaining the probability of life reference may be had to the scientific tables on that subject.

"Third. They may consider the loss of his care, attention, and society to his widow and child.

"Fourth. They may add such sum as they deem fair and just by way of solace and comfort to his widow for the sorrow, suffering, and mental anguish occasioned by his death, provided they do not find over ten thousand dollars.

### No. 4. Refused.

"If the jury believe from the evidence that the defendant employed plaintiff's intestate, C. O. McDonald, as a brakeman on one of its passenger trains, and that at the time he was so employed the defendant was using matched couplers on the said train, he assumed as a part of his contract of service any risk which might be caused by the use of such matched couplings, which was open and obvious, and which he had opportunity to ascertain; but did not assume any risk which might be caused by the use of mismatched couplings on said passenger train; and if the jury believe from the evidence that after McDonald went into the service of the defendant as such brakeman, the defendant began to change the couplings on its cars, from the Miller to the Janney coupler, and that it was necessary while making said change in the exercise of ordinary care and prudence, to use different kinds of couplings, which were mismatched, and the dangerous character of which were open and obvious, the said McDonald had the right to presume that the defendant would use due diligence in making said change of couplers upon its cars, and would within a reasonable time provide its said cars with self couplers which were reasonably safe for the performance of the work required of him as such brakeman.

### No. 5.  Refused.

"The court instructs the jury that if they believe from the evidence that the defendant was using the matched Miller couplers when C. O. McDonald went into its service as a brakeman upon its passenger cars; and that it afterwards, in the exercise of ordinary care and prudence, began to change the couplers upon its said passenger cars from the Miller coupler to the Janney coupler, that, in making said change it was wholly unnecessary, in the exercise of ordinary care and prudence, to use mismatched couplers upon its said passenger cars, and that the use of such mismatched couplers was dangerous, and exposed the said McDonald to risk which he did not assume at the time of his contract of service, then the defendant was negligent in using said mismatched couplers, and if said C. O. McDonald was injured and killed by the use of said mismatched couplers, the defendant was negligent, and liable to the plaintiff in damages, unless they believe that the said C. O. McDonald was himself guilty of such negligence as proximately contributed to his death.

### No. 6.  Refused.

"If the jury believe from the evidence that C. O. McDonald was employed by the defendant as a brakeman upon its passenger train, and that when he was so employed defendant was using mismatched couplers upon some of its passenger cars, which said C. O. McDonald was required as such brakeman to couple, but was in the progress of changing the couplers upon its cars from the matched Miller couplers to the matched Janney couplers, so as to eventually have upon all of its said cars matched Janney couplers, the said C. O. McDonald had the right to presume that the defendant would exercise ordinary care in making the said change and would make the same in a reasonable time.

*No. 7.    Refused.*

The court instructs the jury:

"That where a servant, in obedience to the order of his superiors, incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable that it may be safely used by extraordinary caution or skill, the case is not to be regarded as one of concurring negligence.

*No. 8.    Refused.*

"Mere negligence or want of ordinary care or caution will not disentitle the plaintiff to recover, unless it be such that but for that negligence or want of ordinary care and caution the misfortune could not have happened, nor if the defendant might, by the exercise of ordinary care on his part, have avoided the consequence of the neglect or carelessness of the plaintiff."

Thereupon the defendant tendered six instructions. Some of these the court refused, others it amended. Those actually given, whether as originally asked, or as amended, or as substitutes, were as follows:

*No. 2.    Given.*

"The jury are instructed that a person who contracts for the performance of the duties of railroad brakeman assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which he had opportunity to ascertain, and if Charles O. McDonald was killed by a cause, the dangerous character of which was open and obvious to him, the jury should find for this defendant, although they should believe the defendant was negligent in providing appliances which caused such danger.

### *No. 4.  Given.*

"If the jury believe from the evidence that John Lucas was the engineer, and Charles O. McDonald a brakeman on the same train, working under the same conductor, deriving their authority and compensation from the same source, and were engaged in the same general business of running the train on which they were working, and one not in authority over the other, they were fellow servants, and each took the risk of the other's negligence.

### *No. 5.  Given.*

"The jury are instructed that if they believe from the evidence that when Charles O. McDonald entered service as a passenger brakeman the defendant was using mismatched couplers on the train when he went into such service, he assumed as a part of his contract of service any extra risk which might be caused by the use of such couplings over that caused by the use of matched couplings, and which risks were open and obvious, or by the use of ordinary diligence and observation should have been, to him.

### *No. 7.  Substituted for No. 6.*

"The jury are instructed that the defendant was under no greater obligation to care for the safety of Charles O. McDonald than he was to take care of himself; that while the company was under obligation to use care for the safety of McDonald he was under a like obligation to use ordinary care for his own safety, and to observe the machinery with which he operated."

*J. C. Wysor, F. W. Morton* and *Isaac Hudson,* for the plaintiff in error.

*Phlegar & Johnson* and *J. E. Moore,* for the defendant in error.

RIELY, J., delivered the opinion of the court.

This is the sequel of the case of *N. & W. R. Co.* v. *McDonald's Adm'r.*, reported in 88 Va. 352.

It is a general principle of the law of master and servant that the master shall use ordinary care and diligence to provide reasonably safe and suitable machinery and appliances for the use of the servant, and the master will be held liable for an injury to the servant, which results from the omission to exercise such care and diligence. 3 Elliott on Railroads, sec. 1273; *N. & W. R. Co.* v. *Ampey*, 93 Va. 108; *Bertha Zinc Co.* v. *Martin*, 93 Va. 791; *Richmond Locomotive Works* v. *Ford*, 94 Va. 627; *W. & G. R. Co.* v. *McDade*, 135 U. S. 554; and *Union P. R. Co.* v. *Daniels*, 152 U. S. 684.

It is also a settled principle that a servant, when he enters the service of the master, assumes all the ordinary risks of such service. He assumes, as a general rule, all risks from causes which are known to him, or which are open and obvious, and must exercise reasonable care and caution for his own safety while engaged in the master's service. 3 Elliott on Railroads, secs. 1288, 1296; *Clark* v. *R. & D. R. Co.*, 78 Va. 709; *Bertha Zinc Co.* v. *Martin*, supra; *Randall* v. *B. & O. R. Co.*, 109 U. S. 478; *Tuttle* v. *Detroit, &c. Railway Co.*, 122 U. S. 189; *W. & G. R. Co.* v. *McDade*, 135 U. S. 554; *Kohn* v. *McNulta*, 147 U. S. 238; *Southern Pacific Co.* v. *Seley*, 152 U. S. 145; and *Sweeney* v. *Berlin, &c., E. Co.*, 101 N. Y. 520.

It is likewise well settled that if the servant is injured by reason of a defect in the machinery or appliance furnished by the master for the use of the servant, or its unsuitableness, which defect or unsuitableness is known to him, and the servant, after such knowledge, remain in the service of the master, and continue to use the machinery or appliance without giving notice of the defect or unsuitableness to the master, or without any promise by the master to render the same less dangerous, he will be taken to have assumed the risk of all danger to be reason-

ably apprehended from its use, and is bound to exercise the care and caution which the perils of the business demand. *Clark* v. *R. & D. R. Co., supra; C. & O. R. Co.* v. *Hafner,* 90 Va. 621; *N. & W. R. Co.* v. *McDonald,* 88 Va. 352; *Hough* v. *Railway Co.,* 100 U. S. 213; *Tuttle* v. *Detroit, &c., R. Co.,* 122 U. S., 189; *W. & G. R. Co.* v. *McDade,* 135 U. S. 554; and *Southern P. R. Co.* v. *Seley,* 152 U. S. 145.

It is by the application of these principles that this case is to be determined.

The intestate of the plaintiff was a brakeman on a passenger train of the defendant company, and lost his life in attempting to couple the baggage car and the second-class car. The complaint is that his death was due to the fact that the couplers on the two cars were mismatched.

It appears from the record that the defendant had been using the Miller coupler on its cars, and was gradually substituting the Janney coupler in its place, but that the change from the one to the other had not been wholly effected. It was in attempting to couple the said cars, one of which was equipped with a Miller coupler, and the other with a Janney coupler, that the intestate of the plaintiff was fatally injured.

The case is brought before us upon a certificate of the evidence, and is to be considered upon the principles of a demurrer to the evidence (Code, sec. 3484), which are too well settled and familiar to be here stated. *Trout* v. *Va. & Tenn. R. Co.,* 23 Gratt. 619; *Johnson* v. *C. & O. R. Co.,* 91 Va. 171; and *Fidelity, &c. Co.* v. *Chambers,* 93 Va. 138. They will be applied, in the consideration of the case, without further reference to them.

There is no evidence that either of the couplers, prior to the accident, was out of order. They were simply of different designs, in consequence of which they were mismatched, and would not couple the one with the other, but a link and pin had to be used to effect the coupling.

The contention of the plaintiff in error is that the couplers being mismatched, the coupling of the cars was thereby rendered

more difficult and dangerous, and this was a violation of the duty resting on the defendant to furnish its servants with reasonably safe and suitable machinery and appliances with which to work, and rendered it liable in damages for the injury.

It was held by this court in *N. & W. R. Co.* v. *Brown*, 91 Va. 668, that the use of mismatched couplings on freight cars in the same train was not negligence *per se* in the railroad company. Whether their use on cars in a passenger train would constitute negligence, it is unnecessary to decide, as the decision of the case must turn upon the application of the other well-settled principles hereinbefore stated. See, however, *Kohn* v. *McNulta*, 147 U. S. 238.

It appears that McDonald, when he entered the service of the defendant, took the place of the witness Davis as brakeman, and Davis testified on the trial that these mismatched couplers were used by the company when McDonald entered its service. It was also abundantly shown that the fact that the couplers were mismatched was open and obvious, as was also the danger of coupling cars fitted with them. It was further proved by Davis that McDonald made several trips with him before he was duly installed as brakeman, in order that he might become familiar with the duties of the position, and that he (Davis) pointed out to him the mismatched couplers, and instructed him how to couple them, so as to keep from being hurt. McDonald seeing, when he entered the service of the defendant, that the mismatched couplers were used by it, and being informed as to the danger attending their use, which was also open and obvious, assumed under the law the risks incidental to their use, from which it results that there can be no recovery for the injury he thereby sustained.

It should be also added that it does not appear from the evidence that he even made any complaint to the company of the use of the mismatched couplers, or of the danger resulting from their use, and required the same to be remedied, or that the company at any time promised to do so, but he continued in its ser-

vice, and performed the duties of brakeman for more than a year, all the time using these appliances. He was fully aware of the difficulty of coupling cars with them. He was conscious of the danger attending their use, but did not ask that they be disused, or in anywise changed. The perils of using mismatched couplers was as well known to him as to the company; they were as open and obvious to him as to it. He is to be taken, under these circumstances, to have assumed the risk of all danger to be reasonably apprehended from their use, and was bound to exercise the care and caution commensurate with the perils of the business which he had engaged to perform. But instead of exercising due dare and caution, he was trying to effect the coupling in the most dangerous way, contrary to the way by which it was usually done, and to the way he had been taught to do it.

The case of *N. & W. R. Co.* v. *Ampey,* 93 Va. 108, was relied on by the plaintiff in error as authorizing a recovery. This case is wholly unlike that, and is easily distinguishable from it.

*Here* the mismatched couplers had been used by the company and handled by the deceased for upwards of a year, during all the time of his serivce. The dangers attending their use were open and obvious, and he was aware all of that time of the difficulty of coupling cars with them, and the risks he encountered; but, with every opportunity to do so, made no remonstrance or complaint.

*There* the defects in the couplings were not discovered by the brakeman, Ampey, until he was required to couple the cars into the train, which was then on its journey. There was no one to whom he could report the bad condition of the couplings, except the conductor of the train. This he promptly did, with the result that he was ordered to couple the cars. The coupling was a necessity of the occasion. The duty to make it devolved on Ampey by virtue of his employment. He saw that he could couple the cars without injury to himself, if extraordinary care and caution were exercised, and he aimed to do what the

exigencies of the occasion required of him in the discharge of the service he owed the defendant, after stipulating with the con-. ductor for the observance of the precautions which the unsafe implements he had to use suggested, but which were not observed, and he was consequently hurt. That case does not constitute a precedent for a like decision in this case.

Stress was laid on the fact that a piece of iron projected about three inches from the sill of one of the cars and caught the clothing of McDonald as he attempted to escape from between them. It appears that a piece of iron of this description had been fixed to this and other cars of the defendant for years, and that its existence was well known not only to brakemen, but to employees in other branches of the service. It was not concealed, but plainly visible, and McDonald could not have performed his duties as brakeman without becoming aware of it. There was a hole in the end of it, for the purpose of attaching a chain fastened to a stationary pin, which was carried in a hole in the top of the sill for use in case of an emergency, or breakdown. And it was abundantly shown that it was not usual or proper for a brakeman to go between cars to couple them where they were fitted with mismatched couplers, and McDonald was negligent in doing so.

The instructions complained of by the plaintiff in error will now be briefly considered.

The objection urged to the amendment made in instruction No. 2 offered by the plaintiff, by striking out the words "to the best of its skill and judgment," is untenable. The words so stricken out may doubtless be found in some cases, but they were in apparent conflict with the rule laid down in the preceding part of the instruction, and implied that extraordinary care should be taken by the defendant to provide for the safety of the plaintiff, while the law only requires the exercise of ordinary care and diligence. The words so rejected were at least calculated to mislead the jury, and the court did not err in striking them out.

What has been already said in discussing the merits of the

case is sufficient to show that instructions Nos. 4, 5, and 6 asked for by the plaintiff did not correctly expound the law of the case, and should not have been given. The record discloses no request by McDonald to hasten the substitution of Janney couplers in the place of Miller couplers, nor any promise by the defendant that it would do so. And, moreover, the instructions were antagonistic to the ruling made by this court when the case was before it on the former appeal. 88 Va. 352.

The refusal of the court to give instructions Nos. 7 and 8 furnishes no ground for the reversal of the judgment of the court below. The instructions that were given by the court covered the entire case, and properly submitted it to the determination of the jury, and instructions 7 and 8 could not have furnished to the jury any additional aid in reaching a proper verdict. It was not error, therefore, to refuse them. *Central L. Asylum* v. *Flanagan,* 80 Va. 110; *Ferguson* v. *Wills,* 88 Va. 136; and *N. & W. R. Co.* v. *Mills and Fairfax,* 91 Va. 613.

Nor did the court err in giving defendant's instructions Nos. 3, 4, and 5. Nos. 2 and 5 are in strict accord with the principles hereinbefore referred to, and No. 4 simply announces, as was held by this court in *N. & W. R Co.* v. *Brown,* 91 Va. 668, that an engineer and brakeman are fellow-servants.

The result being that the judgment of the Circuit Court must be affirmed, it becomes unnecessary to consider the errors assigned by the defendant in error.

*Affirmed.*