## Staunton.

STREET'S ADMINISTRATOR v. NORFOLK & WESTERN RAILWAY CO.

September 10, 1903.

Absent, Keith, P., and Buchanan, J.*

1. MASTER AND SERVANT—*Safe Place—Negligence of Servant—Case at Bar.*—Where an employee is confronted with two methods of performing work, the one safe and the other dangerous, he owes a positive duty to his employer to pursue the safe method, irrespective of the degree of danger which may be involved in the unsafe method, and any departure from the path of safety will prevent his recovery in the event he is injured. In the case at bar, the plaintiff's intestate came to his death as the result of his own negligence. He was engaged in "pinching" a loaded railroad car to its position on a pier. While so engaged he stood astride the rail, although an ample platform just outside the rail had been provided for him to stand on, and he had been repeatedly warned not to get on or between the rails, but to use the platform. While in the dangerous position described he was struck by a car being pushed by an engine and was killed. The trial court rightly held that there could be no recovery.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, rendered February 1, 1902, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Theodorick A. Williams* and *Charles F. McIntosh,* for the plaintiff in error.

*Judge Buchanan was detained at home by sickness.

*Robert M. Hughes* and *P. H. Cabell*, for the defendant in error.

· Cardwell, J., delivered the opinion of the court.

This action was brought in the Court of Law and Chancery for the city of Norfolk to recover damages for the death of William Street, the son and intestate of plaintiff in error, alleged to have been occasioned by the negligence of the defendant in error.

The defendant in error pleaded "not guilty," and after the testimony was closed demurred to the evidence. Thereupon the jury returned a verdict for the plaintiff, subject to the opinion of the court on the demurrer to the evidence, and assessed her damages at $5,000. The court sustained the demurrer, and rendered judgment for the defendant, and this judgment we are asked to review and reverse.

It appears that the defendant in error was the owner and operator of a trunk-line railway for the transportation of passengers and freight, with a terminus for the delivery of passengers and freight generally at Norfolk city; and was also the owner of the piers at Lambert's Point, near the city of Norfolk, upon which the deceased, William Street, was at work, at the time of the accident to him, in the employ of one John Towhy, an independent contractor with the defendant in error for the unloading of cars of coal from the piers into the vessels lying beside the piers. The piers extend into Elizabeth river, and are elevated above the surface of the water. The approach by which cars were brought upon the piers was a single track running from the yard of the defendant in error, which was near by. The approach from the yard to the pier was necessarily a steep grade, meeting the piers at the closed end of the "V" formed by the connection of the tracks on the two piers at the upper end of the approach, where there is a switch from

which one track runs onto Pier No. 1 (the north pier) and the other track running onto Pier No. 2 (the south pier). Near the beginning of each pier there is likewise a switch, and the track upon the piers divides, so that there are two tracks upon each pier.

The deceased was about 21 years of age, and had been engaged in unloading cars on these piers about three or four weeks. On the night of the accident, by which he lost his life, he was working in a gang of twelve or thirteen men, of which one Amos Ballard was the foreman or leader. They were all employees of Twohy, the independent contractor. Seven cars loaded with coal were standing coupled together on track No. 2 of Pier No. 1. Street, Ballard, and Butts were the members of the gang whose duties were to move each one of these cars to the place on the pier where the other members of the gang were to unload the coal through a pocket or chute onto the vessel. They had moved down two cars, and had come back for the third. Butts had gotten upon the car and had taken off the brake. Ballard stood on one side and Street on the other, and these two, with pinch bars, were pinching the car so as to move it over the pocket or chute connected with the vessel onto which the coal was to be loaded. "Pinching" is the placing of a crowbar on the iron rail under the wheel of the car and prizing it along until the car has acquired sufficient momentum to take it down a slight grade. Street and Ballard had moved the car about two feet from the remaining cars, and Street was standing between the cars, and straddling the rail, with his pinch bar against his stomach. Just then another cut of cars was pushed up onto Pier No. 1 from the yard by a locomotive, and this cut of cars was shoved against the four cars standing on the track, and, as was the custom, coupled with them. When the cars struck and coupled together, the "slack" ran out of the four cars, and the rear car, moving up two or three feet, struck Street, who was, as stated, standing between the cars, and drove

the bar with which he was "pinching" through his stomach, catching his left foot between the rail and the wheel of the car, and killed him.

At the place of the accident there was a platform on the side on which Street was struck six or seven feet wide, and on the other side four or five feet wide. Each platform was protected by a railing, so that there was a perfectly safe place to perform the work in which Street and the others with him were engaged, without going between the cars. It plainly appears from the evidence of plaintiff in error that Street had been told time and again to "pinch" the cars from the outside, and not to stand between the cars, or to straddle the rail, and that the danger of getting between the cars had been pointed out to him on the very night of the accident, and but a few minutes before it occurred.

There is no sort of conflict in the testimony that Street had been warned not to stand between the cars. "I told him," says Ballard, a witness for the plaintiff in error, "Don't get straddle the railing, always 'pinch' from the side of the railing" (meaning rail). This witness further states that Street had plenty of room to stand on the platform outside of the cars, and that, if he had not been between the cars, he would not have gotten hurt; that he had warned him (Street) that night not to get between the cars, thirty or forty minutes before; and that he had warned Street to look out for cars as they came up, the instructions being for the men to look out for the cars as they came up to the top of the slope at the end of the piers.

Bunch, another witness for plaintiff in error, engaged at the time in the same work, testifies that they were warned "a thousand times" of the danger of standing between the cars when "pinching" them down to the chute; that the orders they had were to stand outside of the rail, and that this was the habit of those engaged in the work. The witnesses for defendant in error testify to the same effect. The uncontradicted evi-

dence, therefore, is that the customary, proper, and safe way to do the work in which the deceased was engaged was to stand outside of the rail when "pinching" the cars down; that he had been warned of the danger of disobeying the orders given for the safe conduct of the work; that those engaged in this work were not to rely upon warnings of the approach of cars pushed up unto the piers to be unloaded; that it was not customary to ring the bell or blow the whistle of the engine moving the cars up; that the exhaust from the engine coming up the approach was very loud, and would "drown the ringing of the bell"; hence the orders to stand outside of the rail to pinch the cars, and not to stand astraddle the rail.

This being the proof as to the contributory negligence of the deceased, it is clearly not a case in which it can be said that reasonably fair-minded men might differ as to whether or not he was guilty of contributing directly to his own injury. His contributory negligence being the proximate cause of his injury, there can be no recovery. *Bowers* v. *Bristol Gas & Elec. Co.*, 100 Va. 533, 42 S. E. 296; *Humphreys' Adm'x* v. *Valley R. Co.*, 100 Va. 749, 42 S. E. 882; *N. & W. Ry. Co.* v. *Cromer's Adm'r*, 99 Va. 763, 40 S. E. 54; *C. & O. Rwy. Co.* v. *Sparrow's Adm'r*, 98 Va. 640, 37 S. E. 302; *Railroad Co.* v. *Mauzy*, 98 Va. 694, 37 S. E. 285; *Moore Lime Co.* v. *Richardson's Adm'r*, 95 Va. 326, 28 S. E. 334, 64 Am. St. Rep. 785; *McDonald's Adm'r* v. *N. & W. Ry. Co.*, 95 Va. 98, 27 S. E. 821; *N. & W. Ry. Co.* v. *McDonald's Adm'r*, 88 Va. 352, 13 S. E. 706, and authorities cited; *Tuttle* v. *Railroad Co.*, 122 U. S. 194, 7 Sup. Ct. 1166, 30 L. Ed. 1114; *Aerkfetz* v. *Humphreys*, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758; *R. Co.* v. *Mosely*, 112 Ga. 914, 38 S. E. 350; Beach on Con. Neg., sec. 442.

Where an employee is confronted with two methods of performing work, the one safe, and the other dangerous, he owes a positive duty to his employer to pursue the safe method, irrespective of the degree of danger which may be involved in

the unsafe method; and any departure from the path of safety will prevent his recovery in the event he is injured. *Railroad Co.* v. *Mosely, supra*; *Bowers* v. *Bristol Gas & Elec. Co., supra.*

It follows that we are of opinion that the judgment of the trial court in sustaining the demurrer to the evidence in this case was plainly right, and must be affirmed.

*Affirmed.*