BAY STATE ST. RY. CO. v. RUST.

(Circuit Court of Appeals, First Circuit.     June 21, 1918.)

No. 1349.

MASTER AND SERVANT ⬡⟶356—MASTER'S LIABILITY FOR INJURY TO SERVANT—WORKMEN'S COMPENSATION ACT.

> Under Rhode Island Workmen's Compensation Act, § 1, providing that it shall not be a defense "that the employé has assumed the risk of the injury," it is immaterial whether the risk was assumed by acts of the employé or by his contract of employment.

In Error to the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Action at law by Cecelia Rust against the Bay State Street Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William R. Harvey, of Newport, R. I. (Sheffield & Harvey, of Newport, R. I., on the brief), for plaintiff in error.

Everett L. Walling, of Providence, R. I., for defendant in error.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

HALE, District Judge. The plaintiff below recovered judgment against the defendant, under the Rhode Island Employers' Liability Act (section 14, c. 283, of the General Laws of Rhode Island 1909), as supplemented by the Rhode Island Workmen's Compensation Act (chapter 831 of the Public Laws of 1912), for the death of her husband. Harold H. Rust, on December 11, 1916, alleged to have been caused by the negligence of the defendant, while in its employ as a lineman; engaged in renewing wires on one of its poles in Newport, R. I.

The railroad had not accepted the Workmen's Compensation Act. Section 1 of that act provides as follows:

> "In an action to recover damages for personal injury sustained by accident by an employé arising out of and in the course of his employment, or for death resulting from personal injury so sustained, it shall not be a defense: (a) That the employé was negligent; (b) that the injury was caused by the negligence of a fellow employé; (c) that the employé has assumed the risk of the injury."

The railroad contends that, although the above statute applied, and deprived it of the defense that Rust "had assumed the risk of the injury," still, under its general denial, it is entitled to rely upon a contractual assumption of the risk by him, as opposed to a voluntary assumption of the risk; that, upon the evidence, it appears that he contractually assumed the risk of the dangers which caused his death; and that, at the end of the testimony, the District Court should have directed a verdict for the defendant. This question is raised by the assignments of error.

The issue brought before the court below was the question of the defendant's negligence. The plaintiff stated a case of negligence. In

the several counts, which we need not recite in detail, it was alleged by the plaintiff in substance: That on December 11, 1916, Rust was a lineman on the defendant's electric railway in Newport, engaged in renewing wires; that the defendant failed to meet its duty of providing him with a reasonably safe place to work; that it set him to work in close proximity with electrical appliances and instrumentalities which were not reasonably safe and suitable; or, if safe and suitable under some circumstances, on the morning in question they were not safely and suitably insulated so as to protect the lineman from dangers of which he was ignorant and of which he was not warned; that the defendant was negligent, in that it failed to insulate dangerous terminals while Rust was working on the top of the pole near such terminals, and in failing to warn him of the dangerous condition of the various terminals. The issue of fact at the trial was the question of defendant's negligence. The plaintiff offered testimony tending to show that Rust was ordered upon a pole by the defendant's foreman, to renew certain wires; that there was on the pole a pothead which was the direct cause of his death; that this pothead was attached by a bracket projecting outward from the second cross-arm; that the pothead was a device for attaching overhead wires to certain other wires which came up the side of the pole inside a lead cable; that these latter wires were not attached to the overhead wires, but were connected in a manhole in the sidewalk to an underground cable which carried a high voltage and was dangerous to human life; that, when not so arranged, these wires did not indicate electrical dangers. There was testimony tending to show that Rust did not have knowledge of certain dangerous conditions to which he was exposed and was not warned. There was also testimony that the potheads were not of a reasonably safe and suitable construction; that they were not properly insulated; and that it was not proper construction to allow exposed contacts to remain with high voltage current running through them, without some means, in the nature of a warning sign, to indicate that they were alive.

The defendant offered testimony to show that the potheads were of the best kind known to the art, that they were properly insulated, that they were kept in a reasonably safe and suitable condition, and that there was some warning given. On the question of negligence there was conflicting evidence. The railroad contends that there was conclusive evidence that its electrical system was of approved construction; that the conditions confronting Rust at the time of the injury presented obvious dangers, which should have become apparent to the lineman by the reasonable exercise of his faculties; that, by his agreement, he contractually assumed the risks from which he suffered injury and death; that the provisions of the Workmen's Compensation Act do not apply, so far as they relate to the taking away of this assumption of risk as a defense, inasmuch as his contract of employment necessarily required him to work around obviously dangerous apparatus; and that defendant is entitled to rely upon this fact under its general denial.

The courts undoubtedly recognize two ways by which an employé may assume the risk of the dangers arising in the course of his em-

ployment. He may assume a risk by his own acts. He may also assume a risk which is well stated in Tuttle v. Milwaukee Railway, 122 U. S. 189, 195, 7 Sup. Ct. 1166, 30 L. Ed. 1114, in which case Judge Cooley is referred to as saying that, when an employé engages in his employment, he does so in view of all the incidental hazards of the business when reasonably conducted, and that he and his employer, when fixing the terms and agreeing upon the compensation, must have contemplated these hazards as having an immediate bearing upon their agreement; that the employé well knows that he will be exposed to an incidental risk; and that he must be supposed to have contracted that, as between himself and the master, he would run this risk.

In passing the Workmen's Compensation Act, the Rhode Island Legislature was dealing with a matter of public interest, for the protection of a great class of our citizens. Its legislation should not receive a narrow construction. The Legislature used the plain, broad language that in an action to recover damages for personal injuries sustained by accident by an employé, in the course of his employment, it shall not be a defense "that the employé assumed the risk of the injury." The Legislature had before it the well-known condition that there are the two ways which we have mentioned by which an employé may assume the risk of injury; namely, by his acts and by his agreements. Nothing is brought to our attention which tends to the conclusion that the Legislature intended to exclude one way of assuming risk, and to permit another. Nothing before us leads to the inference that the Legislature did not intend to exclude the entire matter of assumed risk, regardless of classifications as to the different ways by which a risk may be assumed. The Legislature may well have had in mind, also, that the master's liability depends upon negligence; and that evidence of negligence is often directed to what an employé is doing under his agreement of service. And it is sometimes of little practical importance whether it be found that a certain risk is assumed, or that, under the contractual relations existing between the master and the servant, no negligence is found on the part of the master. This is illustrated in Ashton v. Boston & Maine Railroad, 222 Mass. 65, 109 N. E. 820, L. R. A. 1916B, 1281, which case is relied on by the defendant. In that case, the Massachusetts court had before it a condition in which the plaintiff's intestate was a foreman in the defendant's employ; he was skilled in electrical matters; he was under the duty of seeing whether the electric wires and appliances within the electric zone were in repair, and to maintain and keep them in repair. When injured, Ashton was in the performance of this duty. In doing it he was killed. The court found that the record did not disclose any evidence of negligence on the part of the defendant. That was the decision of the case. What the court said further, beyond deciding the case, it is not necessary for us to consider. It is clear that if dangers ordinarily incident to a business, when properly conducted, are contractually assumed or, standing alone, are not evidence upon which a finding of negligence on the part of an employer could be predicated, we are not concerned with such a case.

In the case at bar nothing happened like the facts in the Ashton Case. Rust was a lineman; he was not a hunter for electrical trouble; he was under no duty to discover whether electrical appliances and instrumentalities were out of repair, and, if so, to repair them; he did not go upon the pole to see whether the pothead needed to be repaired or needed any further insulation; he was there to do his duty as a lineman in renewing wires on defendant's poles; and his injury was not due to a danger incident to the business in which he was engaged, when such business was reasonably conducted. There was evidence tending to show that he met his death by reason of the failure of the railroad to exercise the care of a reasonably prudent man in providing suitable electrical appliances and instrumentalities, in keeping them properly insulated, and in sufficiently warning its employé. There was evidence, also, to the contrary. All this evidence was given to the jury under proper instructions by the court below. We find no error in the action of the District Court in such submission of the case to the jury, and in refusing to direct a verdict for the defendant.

The judgment of the District Court is affirmed, with interest; the defendant in error recovers her costs in this court.