WELCH v. WATERBURY & CO.

(Supreme Court, Appellate Division, Second Department. January 21, 1910.)

1. MASTER AND SERVANT (§ 250*)—INJURY TO SERVANT—ACTIONS—NATURE AND FORM.

Though a common-law action and an action under the employer's liability act (Consol. Laws, c. 31) may both be pleaded, yet, plaintiff having pleaded and tried his action as one at common law, he may not rely on the special rules controlling actions under the employer's liability act, and to entitle a servant to the benefit of the act he must prove his action under it and conform to its terms in so doing.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 805; Dec. Dig. § 250.*]

2. MASTER AND SERVANT (§ 217*)—INJURY TO SERVANT—ASSUMPTION OF RISK—KNOWLEDGE OF DEFECT.

Where a servant suing for injury by slipping on a greasy spot on an iron plate forming a part of the floor of a factory showed that for several years, during three of which he had been a servant in the factory, the machines threw out the lubricating oil on the iron plates placed back of the machines; that the oil had been permitted to accumulate; that the floor had not been cleaned; that various servants had at various times slipped on the oily surface; that he passed over the iron plates every day and knew all about the machines throwing out the oil—the testimony showed, as a matter of law, that he assumed the risk, though he stated that he had not seen any oil on the plate on which he slipped while he passed there before the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 577, 578, 584; Dec. Dig. § 217.*]

3. MASTER AND SERVANT (§ 219*)—INJURY TO SERVANT—ASSUMPTION OF RISK
—OBVIOUS DANGERS.

A servant entering an employment, which is from its nature hazardous, assumes the usual risks of the service, and risks which are apparent to ordinary observation.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 610; Dec. Dig. § 219.*]

4. MASTER AND SERVANT (§ 217*)—INJURY TO SERVANT—ASSUMPTION OF RISK
—CONSTRUCTIVE NOTICE.

A servant who has had every opportunity to see and know what his fellow servants have seen and known, and who has been under such conditions for at least a year, may not give probative evidence that he has not seen the condition, especially where he shows that he was familiar with the details of the place.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 577, 578; Dec. Dig. § 217.*]

5. MASTER AND SERVANT (§ 252*)—INJURY TO SERVANT—NOTICE—SUFFICIENCY.

A notice of injury by a servant injured while passing between rows of machines, by slipping on a grease spot on the floor and plunging his hand into a cogwheel of a machine 30 feet from the machine operated by him, which alleges that he was injured while at work on his machine, through the slippery condition of the floor, does not give notice of any liability under the employer's liability act.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

Hirschberg, P. J., dissenting.

Appeal from Trial Term, Kings County.

Action by John Welch against Waterbury & Co. From a judgment for plaintiff, and from an order denying a new trial on the minutes, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ.

Charles Capron Marsh, for appellant.
Martin T. Manton, for respondent.

WOODWARD, J. On this appeal from a judgment in favor of the plaintiff in an action to recover damages for personal injuries, the appellant contends that the action was not brought upon the theory of any common-law liability, but under the provisions of the employer's liability act (Consol. Laws, c. 31), and that there was no proof that the notice required by the employer's liability act was served within the statutory time, and that for this reason the complaint should have been dismissed, while the respondent as urgently insists that this is a common-law action, and endeavors to sustain the judgment upon this theory. In his first point the plaintiff's counsel says that:

"The action was brought under the common-law theory as well as pleading an action under the employer's liability act."

And at page 11 of his brief he says that:

"This brings us again to the statement above that, aside from the question of assumption of risk, the employer's liability act has little to do with this controversy, but the action is one at common law."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

We are clearly of the opinion that the plaintiff's contention is right; that the action was one purely at common law, and for this reason, and because, upon the question of assumption of risks, the plaintiff was permitted to go to the jury, under the provisions of the employer's liability act, where at common law he had failed to make a case entitling him to such submission, we are of opinion that the judgment and order appealed from should be reversed. There is no such thing as a blending of a common-law action for negligence resulting in personal injuries and an action under the employer's liability act; portions of a common-law action cannot be pieced out with the provisions of the employer's liability act and produce a good and valid judgment, and that is exactly what has been attempted here. It is true that both a common-law action and an action under the employer's liability act may be pleaded, and it may be that in the absence of a demand for an election the plaintiff is not obliged to say on which cause of action he is proceeding; but we believe no case has yet held that a common-law action, pleaded and tried as such, is entitled to the benefits of the special rules laid down for controlling actions under the employer's liability act. Such an intimation was made in Ward v. Manhattan Railway Co., 95 App. Div. 437, 88 N. Y. Supp. 758, but subsequently, and in the case of Curran v. Manhattan Railway Co., 118 App. Div. 347, 349, 103 N. Y. Supp. 351, the same court distinctly rejects the suggestion and says that:

"Further consideration has led to us to conclude that, in order to entitle an employé to the benefit of the provisions of the employer's liability act, he must bring his action under that act and conform to its terms in so doing (Chisholm v. Manhattan Railway Co., 116 App. Div. 320, 101 N. Y. Supp. 622), and that, in an action for common-law negligence, he is not entitled to the benefits of its provisions, but must be governed by the rules of the common law."

In this case the plaintiff was injured by slipping upon a greasy spot upon the floor, or upon an iron plate constituting a part of the floor, in a wire rope factory in the borough of Brooklyn, and the plaintiff's evidence, differing only in degree from that of the defendant upon the main question, tended to · show that for a period of five or six years at least, during three years of which the plaintiff had been employed in the same room, substantially the same conditions here complained of had existed openly and obviously to everybody, and yet the case was submitted to the jury because, as the learned court insisted, the plaintiff had testified that he did not know of this condition. The plaintiff produced five or six witnesses who testified that for a period of several years the machines used in this factory would spurt or throw out the lubricating oil upon the iron plates placed back of the machines, on which the bobbins were allowed to drop on being taken from the same, and that this oil had been permitted to accumulate to a depth of half an inch or more upon these plates, extending out to a greater or less extent all over the floor, and that this floor was never swept or cleaned out during all these years; that the various employés had at various times slipped on this oily surface, though none of them ever appears to have fallen down, much less to have been injured, and all of them testified that this had continued during all the time that they were employed in this factory, some of them as many as six years.

There was no evidence that these machines were not proper machines for the work they were expected to accomplish; no evidence that there was any practical way of preventing the oil from spurting out, or that any one had ever suggested that there was any danger to be apprehended from conducting the factory in the way it was being conducted. The plaintiff, after much quibbling, which may have been due to his failure to comprehend the questions, testified that he had been employed in this factory for two years, that he was then away one year, and that he had been employed there in this same room for a period of one year before the happening of this accident, operating a machine known as a "strand machine," used in making heavy wire rope, so that he had been employed there for three years out of the four years preceding the accident, during which time his own witnesses testify that this oily and slippery condition had prevailed. His complaint, and his notice served under the employer's liability act, alleged that he was injured while at work upon his machine, through the slippery condition of the floor; but his bill of particulars, and his own testimony, dispute this, and say that the accident happened on a machine some 30 feet away from the one on which he was employed, and that it occurred while he was walking down a passageway between rows of machines similar to his own on his way to the toilet room, and that the cause of the injury was not due to anything inherently wrong in the machine, but simply because he slipped upon this oily plate and plunged his hand into a cogwheel in falling, so that it is apparent the accident might have resulted substantially the same if a sharp axe or some other article capable of injuring him had been placed outside of this passageway but in reach of his hand when he fell. In other words, the machine had nothing to do with his injury, except that it happened to be where in falling he reached his hand into the cogwheels, instead of hitting something else that might have been there, and it is not claimed that the defendant was negligent in this regard.

Having in mind the open and obvious danger of a slippery floor, such as the plaintiff's witnesses testify had been maintained for a period of six years, more or less, and the facts above stated, it is important to consider the tetimony of the plaintiff to determine if, at common law, he had made a case entitling him to go to the jury; this question having been presented by the motion to dismiss. He told of his position in the factory at the machine which he was operating, and that he started to walk down the passageway, about four feet wide, between a row of machines, to the toilet room. He says:

"As I was going over to the toilet, I told Mr. Jordon; I went up through the aisle; well, I slipped on this plate. The plate was between the aisles, crossing. * * * The size of this plate was three by two. I stepped on the plate, this iron plate. * * * Say I slipped on that; well, I didn't take notice of what was on that plate at that time. * * * Well, after I fell and got up, I seen the oil there; that's all. The oil was on this plate. This plate extended across the passageway. * * * After I got up I seen the oil. There was oil there about three by one; three foot one way and a foot the other way; a ring of oil about three foot long and a foot wide."

The plaintiff described the way he fell into the gears of the machine, and explained to the court that the iron plates were placed in the floor

for the purpose of holding the bobbins, that they were so heavy that they would pass through an ordinary wood floor, and then on cross-examination he said:

"That same condition had been going on all the years I was there. I was not familiar with it and did not know all about the conditions."

He was asked:

"Well, you knew all about this plate being there and the bobbins dropping on it?"

The court interposed:

"He told you he knew of the existence of it for a year."

The defendant's counsel then continued, and the witness responded:

"That part of it, about dropping the bobbins on this plate, I was familiar with. Every day I would have occasion, one or more times, to go up this passageway to the toilet room or to that end of the room. * * * I could not say as to how many times during the year I had passed over that iron plate. It was a daily occurrence. * * * I say that after I fell I saw some oil on this plate, that the oil was about three foot long and a foot wide. I never knowed that room to be cleaned up. I mean that for the whole year that I had been there I never saw any one clean that room at all, only picking the scrap wires up. * * * There had been nothing done to this iron plate, so far as I know, for a whole year. The machines threw out the oil, nothing besides the oil. Threw out all oil that went on it, a good deal of oil every day, threw it all over. They threw it all over the floor. I mean that the oil was spurting out from these machines all the while, all over the floor; on the wooden floor, too, as well as on these plates. Each machine threw out oil the same way; the whole ten machines. I want to be understood now that nothing was ever done about cleaning up any of this oil for the whole year that these machines were throwing it out."

And then on redirect examination he says:

"I did not ever see any grease upon this plate upon which I slipped, while I was passing there before that accident."

And it was upon this statement that the case was sent to the jury. He says, in harmony with all his witnesses, that for a period of one year all of these machines had been throwing out oil upon these iron plates; that nothing was ever done to clean up this oil; that he passed over these iron plates at least once every day during the year, and yet, because he stated that "I did not ever see any grease upon this plate upon which I slipped, while I was passing there before that accident," he is permitted to go to the jury on the question of whether he had assumed the risks of the employment. He says he knew all about the machines dropping these bobbins upon the iron plate; he knew that the iron plates were placed there because they were too heavy to be dropped on wooden floor; he testifies that for a period of one year these machines had all been throwing out oil upon these plates, and that nothing had ever been done toward cleaning them up; he knew all about these conditions; and yet, unless he makes the distinction between grease and oil, he asks us to believe that in passing over these plates for a period of one year he had never observed their condition. He either knew that there was oil and grease on those plates during the year, or else he did not know that all the machines were throwing out this oil upon these plates and upon the floor during that period,

and this court ought not to permit an intelligent man to profit by his own testimony where it is absolutely incapable of reconciliation with his own theory of the case. Upon his pleadings he was obliged to show that this floor was and had been in a dangerous condition long enough to give the defendant notice; he has furnished the evidence of the condition of this floor for a period of six years, showing the same relative situation. For three years of that time the plaintiff was himself employed in the very room where this condition existed. For one year at least he had been passing over this very plate where he was injured, and he tells us that every one of the machines was throwing out oil upon these plates and upon the floor during this same year, and yet he testifies that he had never seen any grease upon this plate where he slipped, while he was passing there before this accident. It is impossible to harmonize these statements, and the plaintiff has by his own testimony, as well as by that of all of his material witnesses, established that for years this very condition had existed, openly and obviously; that there were no hidden defects, but merely the presence of this oil, which the machines, in the course of their ordinary operation, threw out to the knowledge of all of the persons there employed.

This condition of affairs makes a recovery at common law out of the question. Where a servant enters upon employment from its nature necessarily hazardous, he assumes the usual risks and perils of the service, and also risks which are apparent to ordinary observation (Gibson v. Erie Railway Co., 63 N. Y. 449, 20 Am. Rep. 552; Drake v. Auburn City Ry. Co., 173 N. Y. 466, 66 N. E. 121; Kline v. Abraham, 178 N Y. 377, 381, 70 N. E. 923, and authorities there cited), and certain in this case the defendant must be presumed, as a matter of law, to have known that which was open to the most ordinary observer. In a somewhat similar case the Court of Appeals said:

. "In this case, as we have seen, the plaintiff was perfectly familiar with these stairs. She had been up and down the staircase at least twice daily and must have known of its condition. It was an open, visible structure having no latent, hidden, or unseen defects. * * * If they were slippery by reason of their smoothness or polish, that fact was as apparent to her as it was to her employers; she knew that the steps were not covered with rubber treads, carpets, or other material, and we think the risk incidental to their use was assumed by her." Kline v. Abraham, supra.

A plaintiff who has had every opportunity to see and know what his fellow workmen have seen and known, and who has been under these conditions for at least one year, is not in a position to give probative evidence that he has not seen the condition, particularly when by his own testimony he shows himself to have been familiar with all the details of the place.

The notice served upon the defendant does not give notice of any liability under the employer's liability act; it is merely a notice of the common-law right of action which was litigated, and it was not properly in the case, though it may be questioned whether the objections urged covered this point. At any rate, the plaintiff now holds that it was a common-law action, and this is what was pleaded and litigated, and as the plaintiff, under his evidence, had not established a common-law right to recover, it was error to submit the question to

the jury, and the judgment entered upon the verdict must, with the order appealed from, be reversed if the integrity of the law of negligence is to be preserved.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur, except HIRSCHBERG, P. J., who dissents.