KANSAS CITY SOUTHERN RAILWAY COMPANY v. LIVESAY.

Opinion delivered April 26, 1915.

1. MASTER AND SERVANT—ASSUMED RISK.—The defense of assumed risk is not abolished by the Federal Employer's Liability Act.

2. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.—Although the master owes to his servant the duty to furnish him a safe place in which to do his work, there are some risks of the employment which the servant necessarily assumes, and the master will be held to have performed its duty when it exercises reasonable and ordinary care to furnish a safe place in which the servant may perform his duties, and the master is not liable for an injury which occurs after the performance of this duty.

3.   MASTER AND SERVANT—ASSUMED RISK.—A servant assumes all ob-
vious risks of the work in which he is employed, including the risk
of injury from the manner in which he knowingly sees and observes
that the business is being operated and the work done.

Appeal from Polk Circuit Court; *Jefferson T. Cow-
ling,* Judge; reversed.

*Read & McDonough,* for appellant.

1.   The evidence is not sufficient to support a verdict
under the "Federal Employer's Liability Act," and the
decisions of this court and the United States Supreme
Court construing same.   233 U. S. 573; 234 *Id.* 725; 231
*Id.* 222; 229 *Id.* 265.   Negligence must be proved.   100
Ark. 467; 110 *Id.* 36.   No negligence on the part of the
company is proven.   105 Ark. 161; 102 *Id.* 581; 179 U. S.
658.   The presence of the bolt, a bar, coal, etc., on top of
the tank does not show negligence.   170 S. W. 948; 92 Atl.
178; 143 Pac. 1095.

2.   The master is not an insurer of the servant's
safety.   His duty is to provide a reasonably safe place
in which to perform his duties.   80 Ark. 260; 143 Pac.
1095; 169 S. W. 709; 87 Ark. 217; 90 *Id.* 145; 91 *Id.* 343;
92 *Id.* 350.

3.   Where a servant is in control of the place of work
and undertakes its performance, he assumes not only ob-
vious dangers, but such as ordinary care in the inspection
of the place would have enabled him to discover.   169 S.
W. 709; 90 Ark. 387.

4.   Plaintiff assumed the risk.   233 U. S. 492; 87
Ark. 471; 88 Ark. 292; 99 *Id.* 265; 87 *Id.* 511; 96 *Id.* 206;
93 *Id.* 140; 97 *Id.* 486; 82 *Id.* 11.   The rule is well stated
in 95 Ark. 560.   See also 106 Ark. 436; 108 *Id.* 377; 104
*Id.* 67.

5.   Review the instructions and contend that there
is error in both giving and refusing prayers requested.

*Elmer J. Lundy,* for appellee.

1.   There is no error in the instructions.   The appel-
lee did not assume the risk.   The company was guilty of
negligence in not providing a reasonably safe place to

work. Nor was plaintiff guilty of contributory negligence. 172 S. W. 840-2; 29 N. E. 464; 82 *Id*. 647; 200 Mass. 242; 81 N. E. 1; 121 S. W. 602.

2. This case does not fall within the rule of 90 Ark. 387; 106 *Id*. 436, nor 108 *Id*. 377. It was not the duty of the servant to search or look for danger. It was the master's duty to make reasonable inspection to see that the place was safe. 169 S. W. 940; 109 Ark. 288; 121 S. W. 602.

3. The evidence made a case for the jury under the Federal act. The verdict is sustained by the evidence and the judgment should be affirmed. The master had knowledge of a habit of its employees in throwing obstructions upon the tender in violation of rules and took no measures to guard against them and failed even to notify appellee of the habit, but instead supplied him with the rules by which it agreed that the engine would be safe. 81 N. E. 1; 86 *Id*. 282; 29 *Id*. 464.

SMITH, J. Appellee was a fireman, and was so employed on an interstate train running from Heavener, Oklahoma, to points north in other States. It is alleged, and admitted, that he was engaged in interstate commerce at the time of his injury.

He claims that his injury, which was a rupture, occurred at the town of Salisaw, Oklahoma, on November 16, 1913, at about 1:45 A. M. The train on which appellee was employed was an extra through freight. The train left Heavener at 6:40 P. M., and stopped at Spiro for orders and to take water, and its next stop was at Salisaw for water. After reaching Salisaw they took coal, and then backed the engine down to the tank to take water.

Appellee testified that it was his duty to move the water crane into place to convey the water into the tank of the engine, and that after taking water he was engaged in pushing the crane back into position, when he stepped upon a bolt lying upon the top of the water tank, and that the bolt turned under his foot and caused him to be

thrown against the edge of the tank. He was seriously injured, and recovered substantial damages.

The presence of this bolt constitutes the negligence complained of.

Appellant, in its answer, denied that it was guilty of any negligence, and pleaded, as separate defenses, negligence on the part of appellee and the assumption of risk.

The presence of the bolt upon the tank was one of the issues of fact raised by the evidence; but the verdict of the jury is conclusive of the fact that the bolt was upon the tank, and of the further fact that appellee was injured by stepping on it. Appellee described the bolt as being six or eight inches long and about the size of a chair post.

A number of witnesses testified concerning the duty of appellee to have inspected his engine before leaving the roundhouse. The evidence of the appellant is to the effect that this duty was imposed upon appellee; but he offered evidence that such was not his duty, and that he was under no duty to make any inspection for defects of any kind. It was shown, however, and the proof appears to be undisputed, that it was his duty to make a cursory examination of his engine; and it was also shown that he was at the roundhouse for an hour or longer before the departure of his train. Appellee testified that his engine was a coal burner, and had been cut loose from the train at the time of the accident, and that he had only the engine, tender and tank, the tank being a part of the tender. That there was a man-hole opening into the tank, and that it was necessary for him to stand on the platform around the man-hole to reach for the spout of the crane to let the water in. That there was a partition which cuts the coal off from the back end of this platform, but there were two lumps of coal, a piece of rubber hose, an iron bar, and about two inches of cinders on this platform, in addition to the bolt. Appellee carried an oil torch which threw a bright light, but which was placed by him on the coal and did not light up that part of the platform where the bolt was lying. Appellee testified that there was a rim

four or five inches high around the platform or flat part of the tender, which was seven or eight feet square, or possibly larger, and that the man-hole was in the center of this platform, and stood up some eight or ten inches above it, and there was a lid over this man-hole, and the floor was level between the lattice work which held in the coal and the man-hole, and that the bolt was on this level place. Appellee did not know for what purpose the bolt was used, and could not say whether it was a bolt that might be used around the engine or not.

The evidence was undisputed that it was necessary for engines to carry certain equipment, and that tool boxes were provided for engines of a certain class, while other engines, of the class similar to the one on which appellee was employed, did not have these tool boxes, and it was customary to carry the equipment on the back end of the tank or tender, and that there was no other provision for carrying the equipment on the engines which had no tool boxes. Appellee was shown to have been a skilled fireman, of long experience.

The evidence took a wide range, dealing with the question of the duty to inspect, and with that of the contributory negligence of appellee, and elaborate instructions were given covering all these questions; and many exceptions were saved at the trial and have been discussed in the briefs.

(1-2) The first question presented, and the one which we think is decisive of this case, is that of the assumption of risk. This case is governed by the Federal Employer's Liability Act, but the defense of assumed risk is still in existence under that act. *Seaboard Air Line Railway* v. *Horton,* 233 U. S. 492. Appellee was an experienced fireman, and there was no breach of any duty to warn him of the dangers incident to his service, unless that duty arose out of the presence of the bolt near the man-hole. But the proof is undisputed that appellee's engine carried no tool box, and that it was customary and usual to place on this platform about the man-hole such

articles as appellee says were there at the time of his injury. Appellee had no right to expect that this space about the man-hole would at all times be kept free of obstructions. He admits that there were two lumps of coal in this space, which fell over the lattice work supporting the coal after the engine had taken coal but before it took water. It was as probable that he would stumble over one of these lumps of coal as that his foot would be turned by stepping on the bolt. If the defense of assumption of risk means anything, this appears to be a proper case to apply it. The master is not required to make the servant's place absolutely safe. To impose this duty upon the master would make him an absolute insurer of the servant's safety. There are certain risks usual and ordinarily incident to the service in which appellee was engaged, and if the injury resulted from one of these risks appellant could not be held liable. The measure of appellant's duty was to exercise reasonable and ordinary care to furnish appellee a reasonably safe place in which to perform his duties while he, himself, exercised ordinary care in the discharge of those duties, and the master is not liable for any injury which results after he has performed this duty. But even when this duty has been performed, there remain certain risks of injury which may arise, notwithstanding the care which has been exercised to avoid them. These risks are the assumed risks, and if the servant is injured as the result of one of them he can not recover. This rule has been stated in many cases in our decisions, and is well stated in the case of *Graham* v. *Thrall*, 95 Ark. 562, as follows:

(3) "By his contract of service he (the servant) impliedly agrees to bear the risk of all dangers that are ordinarily incident to the employment, and consequently he can not recover for injuries which result to him therefrom. He thus assumes all obvious risks of the work in which he is employed, including the risk of injury from the manner in which he knowingly sees and observes that the business is being operated and the work done."

Under the proof in this case appellee's injury resulted from one of the risks incident to the employment in which he was engaged, and the judgment of the court must, therefore, be reversed and the cause will be dismissed.

KIRBY, J., dissents.