Smith v. Railroad Co.

No. 22;739.

H. H. Smith, *Appellee*, v. Walker D. Hines, Director General of Railroads, and Missouri Pacific Railroad Company, *Appellants*.

SYLLABUS BY THE COURT.

1. Master and Servant—*Use of Defective Scaffold—Scaffold Erected Under Direction of Foreman—Rule as to Assumption of Risk.* The rule, that where one uses a tool or appliance, simple in construction, without protest or objection he cannot be heard to complain of an injury which occurs while he is using it in the ordinary manner, held not to apply, in an action under the Federal employers' liability act, where a workman was injured by the fall of a scaffold on which he was at work and which was erected under the direction of the gang foreman.

2. Same—*Defective Appliance—Servant's Knowledge of Danger—Question for Jury.* Following *Tecza v. Sulzberger & Sons Co.*, 92 Kan. 97, 140 Pac. 105, *held,* that it cannot be said as a matter of law either that the danger was so obvious that the plaintiff must have known of it, or that it was so remote that the defendant could not be charged with knowledge of it, and that both questions were for the jury.

3. Same—*Instructions.* On the facts stated in the opinion it is held that it was not error to refuse to instruct that the mere fact of the happening of the accident would not sustain a finding of negligence.

4. Same—*Findings Not Contrary to Evidence.* Certain answers to special findings considered, and held not to be contrary to the evidence.

5. Same—*Nature of Servant's Injuries—Verdict Not Excessive.* The plaintiff's injury resulted in producing a facial deformity. The skull was broken, leaving a protuberance over one eye, and crowding the nose to one side, leaving the eyes crooked and the vision impaired. *Held,* that a verdict and judgment for $11,700 is not excessive.

6. Same—*Verdict—Not a Quotient Verdict.* On the facts stated in the opinion it is held that the verdict returned was not a quotient verdict and that there was no error in refusing to set it aside on that ground.

Appeal from Cowley district court; Oliver P. Fuller, judge. Opinion filed December 11, 1920. Affirmed.

*W. P. Waggener, Walter E. Brown,* both of Atchison, and *Charles W. Roberts,* of Winfield, for the appellants.

*A. M. Jackson,* of Winfield, and *A. L. Noble,* of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: H. H. Smith, while employed with a bridge gang on defendant's railway, was seriously injured, and brought this action under the Federal employers' liability act, both parties being engaged in interstate commerce at the time of the injury. The defense was that plaintiff had assumed the risk. The plaintiff prevailed and the defendant appeals.

Smith was a man of ordinary intelligence, 41 years of age, and a farmer; but he had some experience working as a carpenter with saw and hammer and had been employed with the bridge gang five or six weeks when the accident occurred. He was on a scaffold made by lashing 2 x 6's to the side of the bridge piling, where they were held by ropes and on edge. The scaffold was about 10 feet above the ground. On top of the upper edge of the 2 x 6 was a plank or seat board, 3 x10, and Smith was seated astride this and was engaged in boring a hole in a post of the bridge when one of the 2 x 6's, which is referred to as a needle beam, broke where the seat board rested and Smith was thrown to the ground, falling on his head and face. The needle beam had been selected about two weeks before from a car of hard-pine timber, and was new timber. There were some knots in it and it broke near these. It had been used as a needle beam on the day before the accident, and prior to that time had been in use for various other purposes about the bridge. On the day of the injury the scaffold had supported the weight of three men, one of whom was Smith, but when the accident happened he was the only man on the scaffold.

It is contended that the court should have sustained a demurrer to the evidence; that plaintiff showed no cause for the break in the timber, and that his claim was merely that the timber was defective and that the fact that it broke was sufficient to establish his case. The plaintiff had testified that the needle beam was only 2 x 6; that he helped tie the ropes around it and drew the ropes up, and that Wilson, the assistant foreman of the gang, was directing the work. The plaintiff claimed that he had no opportunity to examine the needle beam but that he had been on the scaffold a while the evening before when this particular piece of timber was used, and that he

Smith v. Railroad Co.

had handled it before that time as a straightedge. He helped take the scaffold down the evening before and had helped put it up that morning. He testified that he could and did see the needle beam and that if there had been anything wrong with it he would have spoken to some one about it, but that he made no complaint; that he was looking out for himself to see that it was put up carefully and that it was placed edgewise; that he had Wilson, the foreman, examine the ropes to see that they did not turn; and that he knew that he should pay some attention to these things for his own protection. According to his testimony there was no particular size of timber used for needle beams; he had used 3 x 6, 3 x 10, and 3 x 5 while he worked there; he knew the needle beam on the other side of the bridge was the same size, as he helped take both of them down and helped put both of them up. Another workman was called by plaintiff and testified that the needle beam broke between two knots which were out near the center of the board; the knots were small, about two inches in diameter; and he did not know whether they went clear through the board. Where this witness was working, the needle beams were 4 x 4. Another of plaintiff's witnesses testified that he thought the needle beam was 2 x 6; it looked like a solid board; it did not look like it had any rotten places; he thought it broke between the knots as square as a board could break; he had seen two other men on the same scaffold that morning before the accident; the board that broke was what one would call a good first-class board; and most of the lumber used around the bridge had fine pin knots in it. This was the substance of the plaintiff's testimony.

The defendant insists that negligence could only be established by showing that the board was defective and that the defect was one that could have been ascertained upon inspection and that defendant failed to inspect; further, that the duty of inspection also rested upon plaintiff and that if he had inspected and learned of the defective condition of the board or could have ascertained it, he must be held to have assumed the risk. Numerous cases are cited where it has been held that a scaffold and the planks composing it are simple tools, and that the rule where one uses a tool or appliance, simple in construction, as a scaffold, without protest or objection, he cannot be

heard to complain of an injury which occurs while he is using such an appliance in the ordinary manner. We do not believe the rule with respect to the use of a common tool has any application. The doctrine is usually applied to a tool or appliance which is so simple that it involves no expert knowledge and which the servant uses and handles and therefore is presumed to know more about than the master. The defendant cites a number of scaffold cases in which the doctrine has been applied, but in most of the cases it seems that the workmen were constructing a scaffold for their own use from materials furnished in a mass by the employer. Here the scaffold was erected under the direction of the gang boss who selected the needle beam, tied the rope to it and the plaintiff merely assisted in drawing up the scaffold and securing it in place. (See *Erwin v. Telephone Co.*, 173 Mo. App. 508.)

We think it was a question for the jury whether upon all the facts the plaintiff appreciated the danger attending the use of the board. His testimony is that he would have made complaint if he had thought the board unsafe, and that he made no complaint, and the only inference is that he supposed it was all right. The other workmen seem to have made no complaint. To the contention that it was plaintiff's duty also to inspect, it is sufficient to say that it has been held that "the matter of making the place safe to work in was not his problem. He was not required to take notice of any but the most obvious dangers. But much more than this was required of the employing company. It was under an obligation to consider carefully whether existing conditions involved any unnecessary danger —to use all reasonable care to see that the place was made safe, not only with respect to apparent risks, but also with respect to any that were latent." (*Tecza v. Sulzberger & Sons Co.*, 92 Kan. 97, 101, 140 Pac. 105.) In that case it was held that it cannot be said as a matter of law either that the danger was so obvious that the plaintiff must have known of it or that it was so remote that the defendant could not be charged with knowledge of it, and that both questions were for the jury. (See, also, *King v. King*, 79 Kan. 584, 100 Pac. 503.)

Before assumption of risk will defeat recovery "plaintiff must not only have known of the existing conditions—he must also have realized and appreciated the danger that resulted

from them. (26 Cyc. 1199.)" (*Tecza v. Sulzberger & Sons Co.*, supra, p. 100.) In *Seaboard Air Line v. Horton*, 233 U. S. 492, which was an action under the Federal employers' liability act, it was said as to risks that may arise out of the failure of the employer to exercise due care in providing a safe place to work, and suitable and safe appliances for the work:

"These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them." (p. 504.)

The plaintiff had the right to rely upon the superior knowledge and experience of the gang foreman. (*Tecza v. Sulzberger & Sons Co.*, supra.) *McMullen v. Railway Co.*, 107 Kan. 274, 191 Pac. 306, was an action under the Federal employers' liability act, in which it was ruled that an employee is not held to have assumed the risk unless the danger is so obvious that an ordinary and prudent person would discover and appreciate it. In *Erwin v. Telephone Co.*, 173 Mo. App. 508, it was held that the circumstance that a foreman, was present and supervising the work should be taken into consideration in determining whether or not the issue of contributory negligence was one for the jury, in view of the fact that the servant is warranted in relying on the superior knowledge of the master and is not required to hunt or search for danger, and also, upon the question whether plaintiff assumed the risk, it was held that, since the place in which the work was to be done was not a permanent but a shifting one, the risk of injury was not assumed.

On the main contention it may be said that after the demurrer was overruled evidence was introduced from which it was shown that heavier timbers were furnished and used in the scaffold on the upper portions of the bridge, and it was not an unreasonable inference that by reason of the scaffold in this instance being nearer the ground, it was thought not necessary to use timbers as substantial as those on the upper scaffolds, although the lower scaffolds would be as liable to break as the ones placed at a greater distance from the ground. There was some testimony tending to show that repairs to this bridge were about completed and that a considerable part of the material on hand of a suitable size for needle beams had been

used, and that probably this fact was one reason why lighter material was used in the construction of the scaffold in question. The manner in which the break occurred and all the circumstances in evidence were sufficient, in our opinion, to sustain a finding of negligence in failing to furnish plaintiff a reasonably safe place to work. Nor do we think the doctrine of *res ipsa loquitur* can be said to have been invoked by the plaintiff, and therefore it was not error to refuse to instruct the jury that the mere fact of the happening of the accident would not sustain a finding of negligence.

It is insisted that the court erred in refusing to set aside certain findings. Finding number 6 is as follows:

"If you find that said timber was defective and it was not detected by the plaintiff, then state why the plaintiff, when he lashed said timber in place, did not detect the defects of said timber. Answer: He did not have opportunity."

Of course he had an opportunity to discover that there were knots in the timber, but the evidence shows that most all of that kind of lumber contains some knots. We think it reasonable to assume that the jury meant that in the limited time that occurred while he was tying the rope around the timber and helping to draw it up plaintiff had no opportunity to discover whether the timber was of sufficient tensile strength. It must be remembered that it was not his duty to test it and that he had the right to assume that defendant would not furnish him with timber for such purpose which was not of sufficient strength.

It is true that in finding number 7 the jury say that the plaintiff did not know there were knots in the needle beam before he went to the scaffold. He had testified that he was in a position so he could see and did see some knots in the board, but whether it was before or after he went on the scaffold the evidence does not disclose. However, if it be assumed that the answer was contrary to the evidence and that it should have been set aside, the error would not authorize a reversal because, as we have seen, mere knowledge of the fact that there were knots in the timber would not prevent the plaintiff from recovering. Even an admission of his that he realized some of the dangers would not prove that he realized all of them. (*Erwin v. Telephone Co.*, supra.) If the jury had found that

Smith v. Railroad Co.

he did discover the presence of knots in the lumber before he went on the scaffold, that finding would not show that he appreciated the danger attending the use of it. Assumption of risk would not apply unless he appreciated the danger attending the use of it, and his testimony was that he made no complaint but would have complained if he had discovered anything defective in the needle beam.

It is insisted that finding number 9 was contrary to the evidence and discloses that the jury were unwilling to be fair. The finding is:

"What inspection, if any, did the plaintiff make of the scaffolding which he was working on before he intrusted himself to it? Answer: None."

The contention turns entirely, we think, upon what is meant by inspection. It is clear that he made no inspection for the purpose of discovering whether the needle beam was sufficient; he looked at it; he saw that it contained some knots; he had seen it used before for the same purpose; but the duty of inspection rested, not upon him, but upon the defendant.

The court gave an instruction that where there is a patent and obvious danger in the course of one's employment it is his duty to take notice thereof, and that patent and obvious danger is such as is exposed to open view, or readily observable, and it is insisted that this was the law of the case and that the jury disregarded it in finding number 10, which reads:

"What was there about the needle beam that the defendant knew which the plaintiff did not also know? Answer: The jury does not know."

The argument is based in part upon the theory, to which we cannot consent, that the rule applied in what is known as the simple-tool cases controls in the present case. The mere fact that plaintiff realized the presence of knots in the lumber was not sufficient to charge him with the assumption of risk, and it was a question for the jury whether, in view of all the circumstances, he did appreciate the danger of using the scaffold unless, of course, the defect and risk alike were "so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them." (*Seaboard Air Line v. Horton,* supra.)

It is claimed that the judgment which was for $11,700 is excessive; that prior to the trial, which occurred less than 18 months after his injury, the plaintiff was making more money than before he was injured. This is explained by the fact that he was able to do farm work and received the high wages paid for that class of labor. It was shown that the injury resulted in producing a facial deformity. The skull was broken, causing a protuberance over one eye and crowding the nose over to one side, leaving the plaintiff's eyes crooked. While the amount of the verdict seems large, yet in view of the facial deformity and evidence showing that by reason of its location the disfigurement cannot be relieved by an operation, we are inclined to think the verdict should not be disturbed.

Finally, it is contended that the jury returned a quotient verdict and for that reason it should have been set aside. On the motion for a new trial one juror testified by affidavit that some of the members proposed that each should set down the amount he was willing plaintiff should recover and that the various amounts thus set down should be added and the aggregate sum divided by 12 and that the quotient thus obtained, if it was between $10,000 and $12,500, should be returned as the verdict, and that this was done, and after the amounts were added together and divided by 12, the result was $11,700, and some odd dollars; that it was suggested and agreed that the verdict should be made the even figures at that amount; that the verdict was approximately the result of the averages of the various amounts marked separately by the jurors in conformity with his understanding of the agreement. Another juror testified orally to substantially the same thing, and said it was agreed, according to his understanding before the amounts were separately set down, that the jury would stand by the result and that they all agreed to it. Another juror testified orally in substance that the quotient arrived at was $11,783 and some cents, and that one juror made a motion to knock off the $83 and odd cents, and make it even money. He testified that he did not understand the quotient would be the verdict because he did not think the jury would stand for it. There was considerable testimony that the question of a quotient verdict was discussed in the jury room and that one of the jurors said that that kind of a verdict would not be good and

Smith v. Railroad Co.

for this reason the exact amount of the quotient was not returned. However, there was a disagreement in the evidence as to just what occurred. As much of it was oral and passed upon by the trial court, and as the evidence is not clear upon the question whether the agreement was understood and entered into by all the jurors that the quotient arrived at should be the verdict, we think it cannot be said that it was a quotient verdict. There was testimony that the amounts were averaged and prorated on at least three separate ballots, and one of the jurors testified that the average was taken in this way in order to see how close together the jurors were.

We discover no material error in the record, and the judgment is affirmed.

PORTER, J. (dissenting) : While I think defendant was fairly entitled to have the jury instructed that the mere occurrence of the accident was not of itself sufficient to establish negligence on the part of the defendant, I concur in what is said in the opinion in respect to that matter and I would not order a new trial for the failure to give the instruction. I think, too, that some of the special questions were not fairly answered and that defendant was entitled to have them set aside. However, the error, in my opinion, was not so prejudicial as to warrant a reversal. I am not prepared to say that the amount of the verdict is so excessive as to justify interference by this court, but the size of the verdict, in my opinion, justifies a careful consideration of the manner in which it was arrived at and I am unable to discover any reason for distinguishing between the facts in this case and those in *Johnson v. Husband*, 22 Kan. 277, where the verdict was held to be a quotient verdict and a new trial was ordered. In that case, as in this, and in every case where the question has arisen, some of the jurors have denied that it was formally agreed before the separate amounts were added and divided that the quotient should be the verdict. It was held, however, in the Husband case that because four of the jurors had that understanding, the verdict should be set aside. Here there were two, at least, that had that understanding, and besides, there is no dispute that the matter of a quotient verdict was discussed, and it is not denied that one of the jurors stated that if the exact

amount of the quotient was returned as a verdict it would not stand, and for that reason a slight reduction was made. The vice of a quotient verdict lies in the fact that it does not express a fair compromise of the separate views of the individual jurors; it affords an opportunity for one or two jurors to control the amount of the verdict by voting for an unreasonably large or an absurdly small sum. Upon the whole record I think a new trial should be ordered, but my dissent is confined to that part of the opinion which holds that the verdict is not a quotient verdict.

Burch, J., concurs in the dissent.