# ELSWOOD v. OREGON SHORT LINE R. CO.

No. 4951.  Decided July 12, 1933.  (23 P. [2d] 925)

*George H. Smith, R. B. Porter,* and *W. Hal Farr,* all of Salt Lake City, for appellant.

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, and *B. L. Liberman,* of St. Louis, Mo., for respondent.

ELIAS HANSEN, Justice.

Plaintiff, the servant of the defendant company, recovered a judgment against defendant for personal injuries claimed to have been sustained by reason of the negligence of the defendant. From the judgment, the defendant appeals. The action was brought under the Federal Employers' Liability Act (45 USCA §§ 51-59). At the trial the parties stipulated that at the time plaintiff was injured he was engaged in interstate commerce. The negligence relied upon by plaintiff for a recovery was that defendant carelessly maintained, a short distance above the top of locomotives which were to be repaired in its roundhouse at Salt Lake City, Utah, pipes wrapped with asbestos and tar paper. Defendant denied negligence on its part. As an affirmative defense it alleged that plaintiff by his contract of employment assumed the risk of receiving the injuries concerning which he complained, and that the sole cause of his injuries was his own negligence.

At the conclusion of plaintiff's evidence in chief, defendant moved the court to grant a nonsuit, and at the conclusion of all of the evidence defendant requested the court to direct the

jury to render a verdict in its favor. Both the motion for a nonsuit and the request for an instructed verdict were based upon defendant's claim that the evidence failed to show the defendant guilty of any negligence, and that the evidence affirmatively showed that plaintiff assumed the risk of the matters concerning which he complained and that his injuries were caused solely by his own negligence. The court denied the motion and refused to instruct the jury to render a verdict of no cause of action. Errors are assigned because of such rulings.

The evidence without conflict shows the following facts: Plaintiff was, at the time of his injury, a sheet metal worker of about thirty-three years experience in that occupation. He had worked at that trade since he was a boy and had performed all kinds of work connected with that trade. He had been in the employ of the defendant company for about five years. His work for the defendant consisted chiefly in covering the bodies of locomotives and repairing pipes, jackets, smoke stacks, lining cabooses, and water tanks on passenger cars.

The defendant owned railroad tracks upon which it operated trains propelled by steam power in Utah, Idaho, and various other states. In connection with its business it maintained shops and a roundhouse at Salt Lake City, Utah, in which it repaired its locomotives. The roundhouse was built circular in shape and was divided into twenty stalls. Locomotives were placed in the stalls when they were to be repaired. There was an opening in the roof of the roundhouse above each stall for the purpose of permitting the smoke from the locomotives to escape. Light entered the roundhouse through windows constructed in the wall. When repair work was to be done on an engine, it was run into one of the stalls so that the smoke stack of the engine would be immediately below the opening in the roof. About three months before the time in question, some changes were made in the construction of the stalls in the roundhouse. The loca-

tion of the steam pipes was also changed. After the changes were made, there were three 4-inch steam pipe lines and an inch air line attached to the ceiling of the building. The pipe lines extended in a circle around the building immediately above the cabs of locomotives which were placed in the various stalls. The air line was used to convey compressed air for power used in repair work. The steam pipe lines were used for the purpose of blowing down or cooling off engines which were brought into the roundhouse for repairs. The steam pipe lines were first covered with asbestos, then wrapped with tar paper, then at intervals fastened with wire, and finally the tar paper was painted. The asbestos served to prevent the heat from escaping from the pipe lines. The tar paper and paint served to protect the asbestor from the weather. On the day in question plaintiff and Mr. Bridge were directed by the general foreman of the defendant company to make some repairs on an engine which was standing in one of the stalls in the roundhouse. The engine which was to be repaired was very large. It was the mountain freight type of locomotive. The defendant company operated only one other locomotive of the same type. That type of locomotive was constructed with an unusually large lid over the cab. The lid was 53½ inches long and 25½ inches wide. It weighed about 60 pounds. On one end it was fastened to the engine by means of hinges, the other end was not fastened. The lid served as a means of ventilating the cab when the engine was in use. By raising the end of the lid which was not fastened, it would swing up and open on the hinges which fastened the other end of the engine. Mr. Bridge accompanied by plaintiff went to the engine as directed and after ascertaining what repairs were needed, plaintiff climbed onto the top of the engine, opened the lid on the top of the cab, and repaired that part of the engine which he thought could best be repaired from the top of the engine. As he was in the act of closing the cab lid he fell from the engine onto the cement floor below and sustained the injuries complained of.

Plaintiff testified that it was necessary for him to go onto the top of the engine and open the cab lid in order to make the repairs which he was directed to make; that Mr. Bridge, his immediate superior, told him to go onto the top of the engine to make the repairs; that he had been working in defendant's roundhouse where he was injured for a period of about five years; that he had frequently been required to go on top of engines to make repairs such as the repairs made on the day in question; that he knew the pipe lines were immediately above the engine cab where he was making the repairs but his attention had not been particularly called to the pipe lines; that because of the smoke on the windows it was somewhat dark in the roundhouse at the time he was injured; that when he opened the cab lid he did not observe it catch on anything; that it swung back and rested upon the air line while he was making the repairs; that in closing the lid he reached his hand back and took hold of it and when it reached a perpendicular position it caught, his hand came off, and he fell to the cement floor below; that as he was falling he looked up, saw that the lid was caught on the paper lining which was wrapped around the steam pipe line; that up to that time he had not observed how the tar paper was wrapped around the pipe. Plaintiff's evidence is not entirely clear as to how the lid could have passed the steam pipe line when it was opened but caught when he attempted to close it. The theory, however, which is urged in his brief is that the overlapping of the tar paper which was used to wrap the pipe line created a seam on the bottom of the pipe and that in attempting to close the lid it caught on the seam.

Defendant offered evidence which tended to show that the seam of the tar paper at the place in question was on the side of the pipe line and not on the bottom and that it was impossible for the lid to be opened in such a way as to pass under the steam pipe and rest upon the air line as testified to by the plaintiff. There are other conflicts between plaintiff's testimony and that of defen-

dant, but we need not consider these conflicts in the evidence in passing upon the questions now under review. In deciding the questions of whether or not a nonsuit should have been granted or a verdict directed for the defendant we must view the evidence in the light most favorable to plaintiff. In testing the sufficiency of the evidence with respect to those questions the defendant stands in the position of admitting the truth of plaintiff's evidence, and all reasonabble inferences which the jury might fairly draw therefrom favorable to the plaintiff.

This being an action brought under the Federal Employers' Liability Act, the law announced and applied by the federal courts in similar cases is controlling. It is well settled that it is the duty of an employer to use ordinary care and prudence to see that the place where an employee is at work is reasonably safe. The employer, however, is not an insurer of the employee's safety. There is no guarantee that the place is absolutely safe. While the foregoing general rules are well established, difficulty frequently arises in their application to the special circumstances of particular cases. Respondent cites the following cases in support of his claim that the evidence in the instant case was sufficient to support a finding by the jury that appellant failed to perform its duty of using ordinary care to see that the place where he was at work when he received the injuries complained of was reasonably safe: *Leach* v. *Oregon Short Line R. Co.*, 29 Utah 285, 81 P. 90, 110 Am. St. Rep. 708; *Texas & Pacific Ry. Co.* v. *Swearingen*, 196 U. S. 51, 25 S. Ct. 164, 49 L. Ed. 382; *McAfee* v. *Ogden Union Ry. & Depot Co.*, 62 Utah 115, 218 P. 98; *Smith* v. *Hines*, 108 Kan. 151, 194 P. 318; *E. I. Dupont De Nemours & Co.* v. *Taylor*, 124 Va. 750, 98 S. E. 866. In each of the two Utah cases and in each of the two cases decided by the Supreme Court of the United States, supra, an employee of a railroad company was injured by being struck by an object maintained by the railroad company near the railroad track over which the employee was riding

on a moving train. In the case of *Smith* v. *Hines*, supra, plaintiff was injured by reason of a defective plank breaking on a scaffold upon which he was working. In the case of *E. I. Dupont De Nemours & Co.* v. *Taylor*, supra, Taylor, while riding on a moving tram car, was struck by an overhead pipe. It will be observed that the facts in each of the foregoing cases are so unlike the facts in this case that they are of but little value as precedents in this case. The danger of an employee being injured by the maintenance of a structure in close proximity to a railroad track over which trains are operated cannot well be said to be comparable to maintaining an object near a place designated for the repairs of engines while they are not in motion. There is much more likelihood of an injury resulting in the former case than in the latter.

Defendant cites the following cases in support of its claim that the evidence is insufficient to support a finding that it was negligent in the particulars relied upon by the plaintiff: *Baltimore & Ohio Ry. Co.* v. *Groeger,* 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419; *Missouri Pac. Ry. Co.* v. *Aeby,* 275 U. S. 426, 48 S. Ct. 177, 72 L. Ed. 351; *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492, 34 S. Ct. 635, 639, 58 L. Ed. 1062, L. R. A. 1915C, 1 Ann. Cas. 1915B, 475; *Delaware, L. & W. R. Co.* v. *Koske,* 279 U. S. 7, 49 S. Ct. 202, 73 L. Ed. 578; *New York Cent. R. Co.* v. *Winfield,* 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, *Ann. Cas. 1917D, 1139; Patton v. Texas & Pac. Ry. Co.,* 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; *Washington & Georgetown C. R. Co.* v. *McDade,* 137 U. S. 554, 10 S. Ct. 1044, 34 L. Ed. 235; *Tuttle* v. *Detroit, G. H. & M. R. Co.,* 122 U. S. 189, 7 S. Ct. 1166, 30 L. Ed. 1114; *Toledo, St. Louis & W. R. R. Co.* v. *Allen,* 276 U. S. 165, 48 S. Ct. 215, 216, 72 L. Ed. 513; *McCully* v. *Monongahela Ry. Co.,* 289 Pa. 393, 137 A. 623; *Butler* v. *Frazee,* 211 U. S. 459, 29 S. Ct. 136, 53 L. Ed. 281; *Morey* v. *Maine Central Ry. Co.,* 127 Me. 190, 142 A. 585; *Campbell* v. *Southern Pac. Co.,* 120 Or. 122, 250 P. 622; *Kansas City Southern Ry. Co.* v. *Live-*

*say,* 118 Ark. 304, 177 S. W. 875; *Smith* v. *Seaboard Air Line Ry.,* 182 N. C. 290, 109 S. E. 22; *McLaughlin* v. *Bangor & A. Ry. Co.,* 127 Me. 24, 140 A. 827; *Marks* v. *Harriet Cotton Mills,* 135 N. C. 287, 47 S. E. 432. The cases so cited by appellant recognize and apply to various facts and circumstances the rule that it is the duty of an employer to use ordinary care and prudence to provide the employe a reasonably safe place in which to work, but that the employer is not a guarantor of the absolute safety of the employee. All of the cases cited and relied upon by appellant may be distinguished upon the facts from the case in hand, but the facts involved in some of those cases are such as to clearly indicate the conclusion that should be reached in the instant case. To review all of those cases would unduly prolong this opinion. We shall content ourselves with quoting at some length from the case of *Toledo, St. Louis & W. R. R. Co.* v. *Allen,* supra, which is one of the more recent cases to which our attention has been directed. The facts in that case are thus stated in the opinion:

"The court authorized the jury to find defendant guilty of negligence if the space between the tracks was found to be so narrow that when track 5 was occupied plaintiff was in danger of being struck by cars moving on track 4. It was shown, as stated by the Supreme Court, that the clearance between the car that plaintiff was checking on track 5 and the moving cars on track 4 was about 2 feet and 9 inches without considering the grab-irons on the cinder cars which projected 4½ inches from each corner. While this space was sufficient to enable plaintiff to keep out of the way of the moving cars, the danger attending his work would have been lessened if the distance between the tracks had been greater. The work of checking cars in a yard at night where switching is being done is necessarily attended by much danger. But fault or negligence may not be inferred from the mere existence of danger or from the fact that plaintiff was struck and injured by the moving car. Defendant did not owe to plaintiff as high a degree of care as that due from carriers to their passengers or others coming on their premises for the transaction of business. The reason for the distinction is that plaintiff's knowledge of the situation and the dangers existing because of the narrow space between the tracks was at least equal to that chargeable against the defendant. *Missouri Pacific Railroad Co.* v. *Aeby,* 275 U. S. 426, 48 S. Ct. 177, 72 L. Ed. 351. The rule of law which holds the employer to ordinary care to provide his

employees a reasonably safe place in which to work did not impose upon defendant an obligation to adopt or maintain any particular standard for the spacing or construction of its tracks and yards. *Baltimore & Ohio R. Co.* v. *Groeger,* 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419. Carriers, like other employers, have much freedom of choice in providing facilities and places for the use of their employees. Courts will not prescribe the space to be maintained between tracks in switching yards, nor leave such engineering questions to the uncertain and varying opinions of juries. *Tuttle* v. *D., G. H. & Milwaukee Railway,* 122 U. S. 189, 194, 7 S. Ct. 1166, 30 L. Ed. 1114; *Randall* v. *Baltimore & Ohio R. R. Co.,* 109 U. S. 478, 482, 3 S. Ct. 322, 27 L. Ed. 1003; *Washington, etc., Railroad Co.* v. *McDade,* 135 U. S. 554, 570, 10 S. Ct. 1044, 34 L. Ed. 235. Having regard to plaintiff's knowledge of the situation, it is clear that the evidence when taken most favorably to him is not sufficient to warrant a finding that defendant failed in any duty owed him in respect of the space between the tracks. *Missouri Pacific Railroad Co.* v. *Aeby,* supra. The court erred in submitting that question to the jury."

In the instant case plaintiff testified that there was considerable distance between the steam pipes and the ceiling of the roundhouse above the stall where he was working at the time of his injuries. The assistant engineer of the defendant company testified that the steam pipe lines were installed under his supervision; that it was necessary to construct the steam pipe lines so that they would have sufficient fall to drain them. He and the contractor who installed the pipe lines testified that in wrapping the pipes with tar paper the seams were placed on the lower part thereof so that water would not seep into and injure the asbestos. If, as stated in the case of *Toledo, St. Louis & W. R. R. Co.* v. *Allen,* supra, much freedom of choice is to be allowed an employer in providing facilities and places for the use of employees, and if "courts will not * * * leave * * * engineering questions to the uncertain and varying opinions of juries," it would seem to follow that the defendant was not derelict in its duty to plaintiff by reason of the manner in which the steam pipe lines were constructed. The steam pipes were in plain view. There were only two engines in use by the defendant com-

pany whose cab lids were so long that they could, when opened, come in contact with the steam pipes, and it was only on rare occasions that it became necessary to open up the lid of the cabs in order to repair the engines. According to plaintiff's testimony the lid on the engine in question would not reach the steam pipe line unless it was standing perpendicularly and directly under the pipe and even when the lid was so placed it passed the pipe without interference when the lid was opened. The rule which requires an employer to use ordinary care to provide an employee with a reasonably safe place in which to work is not so exacting as to require the defendant in this case to provide against the remote possibility that some employee might be injured by reason of the steam pipes being constructed in the manner in which plaintif testified they were constructed. To so hold would, in effect, be to say defendant owed plaintiff a duty to provide him with an absolutely safe place in which to work. The authorities are uniform in holding that an employer is not required to exercise that degree of care towards the employee. Upon this record the evidence is insufficient to warrant the finding that defendant failed in any duty owing to the plaintiff with respect to the manner in which the steam pipe lines were constructed.

We are also of the opinion that the defendant is entitled to prevail upon its claim that plaintiff assumed the risk of the injuries concerning which he complains. ▪ The Federal Employers' Liability Act did not change the common-law rule with respect to the assumption of risk as that involved in this case. *Seaboard Air Line* v. *Horton,* supra. In that case Mr. Justice Pitney, writing the opinion for the court, said:

"It seems to us that § 4 [of the Federal Employers' Liability Act, 45 USCA § 54], in eliminating the defense of assumption of risk in the cases indicated, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action. And, taking §§ 3 and 4 together [45 USCA §§ 53, 54], there is no doubt that Congress recognized the distinction

between contributory negligence and assumption of risk; for, while it is declared that neither of these shall avail the carrier in cases where the violation of a statute has contributed to the injury or death of the employee, there is, with respect to cases not in this category, a limitation upon the effect that is to be given to contributory negligence, while no corresponding limitation is imposed upon the defense of assumption of risk—perhaps none was deemed feasible.

"The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employee; and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman, danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinary prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this court. *Choctaw, Oklahoma & Gulf R. Co. v. McDade*, 191 U. S. 64, 68, 24 S. Ct. 24, 48 L. Ed. 96, 100, 15 Am. Neg. Rep. 230; *Schlemmer* v. *Buffalo, Rochester & Pittsburgh Ry. Co.*, 220 U. S. 590, 596, 31 S. Ct. 561, 55 L. Ed. 596, 600; *Tex. & Pac. Ry. Co.* v. *Harvey*, 228 U. S. 319, 321, 33 S. Ct. 518, 57 L. Ed. 852, 855; *Gila Valley, etc., Ry. Co.* v. *Hall*, 232 U. S. 94, 102, 34 S. Ct. 229, 58 L. Ed. 521; and cases cited."

Plaintiff was a man of mature years, and of thirty-three years experience in the kind of work he was performing when he was injured. He had been working in the round-house of the defendant for a period of five years. He saw

the pipe line being constructed some three months before he was injured. He had worked on the top of engines after the pipe lines were installed. He was, according to his testimony, 5 feet 5 inches tall, and hence must have been compelled to stoop over while working on the top of engines such as the one in question. The manner of construction of the pipe lines was known to him. He knew that the lid on the cab of the locomotive he was repairing was unusually long. His knowledge of the entire situation was equal to that of his employer. The cab lid was exclusively under his control. Under such circumstances there is no escape from the conclusion that plaintiff assumed the risk. *Seaboard Air Line* v. *Horton,* supra; *Patton* v. *Texas & Pacific Ry. Co.,* supra; *Toledo, St. Louis & W. R. Co.* v. *Allen,* supra; *Nelson* v. *Southern Railroad Co.,* 246 U. S. 253, 38 S. Ct. 233, 62 L. Ed. 699; *Butler* v. *Frazee,* 211 U. S. 459, 29 S. Ct. 136, 53 L. Ed. 281; *Avery & Sons* v. *Lung,* 106 S. W. 865, 32 Ky. Law Rep. 702; *Ft. Worth & D. C. R. Co.* v. *Goodfellow* (Tex. Civ. App.) 280 S. W. 619; *St. Louis S. W. Ry. Co.* v. *Hynson,* 101 Tex. 543, 109 S. W. 929; *Interstate Coal Co.* v. *Deaton,* 148 Ky. 160, 146 S. W. 396; *Burch* v. *Louisville Car Wheel & Ry. Supply Co.,* 146 Ky. 272, 142 S. W. 414; *Foreman* v. *Louisvill & N. R. Co.,* 142 Ky. 63, 133 S. W. 964; *Chesapeake & O. R. Co.* v. *Sparrow's Adm'r,* 98 Va. 630, 37 S. E. 302; *Brandon* v. *Globe Inv. Co.,* 108 Wash. 360, 184 P. 325, 10 A. L. R. 286; *Welch* v. *Waterbury & Co.,* 136 App. Div. 315, 120 N. Y. S. 1059.

Other errors are assigned, but in light of the conclusions we have reached with respect to the questions heretofore discussed it becomes unnecessary to consider the other assignments.

The judgment is reversed. This cause is remanded to the district court of Salt Lake county with directions to grant a new trial. Appellant is awarded its costs.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFATT, JJ., concur.